### In re SMITH.

(District Court, E. D. Wisconsin. September 23, 1912.)

BANKRUPTCY (§ 185*)—AMENDATORY STATUTE—APPLICATION.

A chattel mortgage having been given by the bankrupt on March 17, 1908, was not filed until September 8, 1909, thereby becoming good for two years from that date, but expiring then, unless within 30 days before the expiration of the 2 years a renewal affidavit was filed. *Held* that, no sufficient affidavit having been filed, the mortgage was in full force and effect under section 47a of Bankr. Act July 1, 1898, c. 541, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), when it was amended June 25, 1910 (Act June 25, 1910, c. 412, § 8, 36 Stat. 840 [U. S. Comp. St. Supp. 1911, p. 1500]), so as to provide that the trustee should thereafter be vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, and hence such amendment was applicable to the mortgage which, without extension, became void as against creditors and therefore as against the mortgagor's trustee in bankruptcy on September 8, 1911.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 234, 235, 273; Dec. Dig. § 185.*]

In Bankruptcy. In the matter of bankruptcy of Fred M. Smith. On proceedings to review a referee's order denying an application of John Bartram. From an order directing the trustee to sell certain property covered by a chattel mortgage held by Bartram, and to apply the proceeds on a mortgage debt. Affirmed.

On March 17, 1908, the bankrupt executed and delivered to the petitioner, Bartram, a chattel mortgage upon property and to secure an indebtedness therein described. Such mortgage was filed with the town clerk of the town wherein the property was located on September 8, 1909, pursuant to section 2314, Statutes of Wisconsin of 1908. On March 5, 1910, the mortgagee made, and on March 7th filed with the town clerk, an affidavit of renewal intended to be pursuant to the Statutes of Wisconsin 1898, § 2315. On September 5, 1911, adjudication of bankruptcy ensued, whereupon one Parrish, who had theretofore levied upon the mortgaged property, was elected trustee, and, doubtless being advised that his execution levy could not prevail, abandoned it, but

continued to hold the seized property as trustee in bankruptcy. Bartram, the chattel mortgagee, applied to the bankruptcy court for an order directing the trustee to sell the property covered by the chattel mortgage, and apply the proceeds on his mortgage debt. The trustee contested the application, claiming that the mortgage was void. The order of the referee upholding the trustee's contention and denying the application of the chattel mortgagee is now here for review.

F. F. Wheeler, of Waupaca, Wis., for trustee.

E. E. & E. L. Browne, of Waupaca, Wis., for John Bartram.

GEIGER, District Judge (after stating the facts as above). On June 25, 1910, Congress passed an amendment to section 47a (2) of the Bankruptcy Law, adding, relative to the duties of trustees in bankruptcy, the following:

"And such trustees, as to all property in the custody, or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon."

Prior to the passage of this amendment, a trustee in bankruptcy was vested with no better right or title to the bankrupt's property than belonged to the bankrupt at the time when the trustee's title accrued. He "stood in the shoes of the bankrupt," and had no greater right; and where, under the state law, which was binding on the bankruptcy court, a chattel mortgage was valid as between the bankrupt and the mortgagee, but not against purchasers, mortgagees, or creditors, it was good as against a trustee in bankruptcy. The adjudication of bankruptcy was not an assertion of a lien, and did not put the trustee in the position of creditors who had, through process, acquired specific liens against the property covered by the mortgage. In other words, if the mortgage, though not filed, was good between the parties, the trustee was not a purchaser, a mortgagee, nor a lienee. Ullman v. Duncan, 78 Wis. 213, 47 N. W. 266, 9 L. R. A. 683; Manson v. Phœnix Ins. Co., Garnishee, 64 Wis. 26, 24 N. W. 407, 54 Am. Rep. 573; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; York Manufacturing Company v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782.

The single question is therefore presented whether, in view of the amendment cited, these general principles govern the situation now here for review. The mortgagee's contention is that the amendment to the Bankruptcy Act, to be applicable, must be given a retroactive effect, but the referee declined to take this view.

As noted, the mortgage was dated March 17, 1908. To be valid as against purchasers, mortgagees, or lien creditors, such mortgage had to be filed. The mortgagee did not file it until September 8, 1909. Under the law, such filing was effective for two years; but, unless within 30 days before the expiration of such two years a renewal affidavit was filed, it ceased to be valid. It appears that on March 7, 1910, or about six months after filing the mortgage, the mortgagee (evidently conceiving the renewal provision of the statute to refer to the date of execution, and not to the date of

filing) filed a renewal affidavit. It is assumed as well settled that such filing of a renewal affidavit at a time other than that specified in the statute was wholly nugatory, and therefore the two-year limit expired, and the mortgage ceased to be valid as against those designated on September 8th, 1911. Thus, on June 25, 1910, when the amendatory act was passed, the mortgage was effective, not only as between the parties, but as against all others, because it had been filed.

· Can the mortgagee be heard to say that the amendment is inoperative because at the time of the execution and delivery of the mortgage the rights which purchasers, mortgagees, or creditors' could assert, had not been conferred upon trustees in bankruptcy? As an academic proposition he might plausibly claim that, not being required, as against the trustee, to file the mortgage at all, the immunity against attack by the latter was a valuable right which should remain unimpaired until the mortgage debt is satisfied. But the practical situation is this: He did in fact file the mortgage, and in doing so shielded it against attack from all sources—he secured the full protection which the statute gives to a filed mortgage. He was at liberty to maintain this protection by filing a renewal affidavit, or he could neglect to do so and thereby hazard attack. Has the amendatory act done anything more than in some degree possibly to change the hazard by introducing the trustee into the class or classes permitted by the state statute to question such mortgage if not filed or renewed? At the time the amendment went into effect, did not the situation itself reserve to the mortgagee all of his rights as they then existed; or, to put it in the least favorable light, is not the amendment entirely consistent with his rights under the mortgage if he would but exercise the choice or opportunity given him by the state statute for the preservation thereof? I think this must be answered affirmatively; and, if so, the question respecting the invalidity of the amendment because retroactive, or for any other reason, is wholly eliminated. It is elementary that a law, unless the legislative intent be clear, will not be given a retroactive effect. But the objection that the law is retroactive must, to be available, be based upon its necessary and unavoidable effect upon rights which had accrued, and not upon its succession in point of time. In my judgment these considerations distinguish the case of Artic Ice Machine Co. v. Trust Co., 192 Fed. 114, 112 C. C. A. 458, where the trustee sought to enforce his rights against an unfiled contract of conditional sale; and the court declined to give the amendment effect, because it necessarily cut off the vendor's title, which, at the time of the passage of such amendment, was good. As indicated, however, in the case now before us, the mortgage might have been held valid against the trustee if not filed, but was also valid because in fact filed and the possibility of claiming the amendment to be retroactive can arise only when the mortgagee, through choice or neglect, has failed to file the renewal affidavit.

I think the referee's decision was right, and the order is affirmed.