ATCHISON, T. & S. F. RY. CO. et al. v. BRATCHER, Adm'r.

No. 12716—Opinion Filed April 29, 1924.

1. Railroads — Crossing Accidents — Negligence—Principles of Liability of Servants.

In an action for damages for death resulting from a crossing accident, where a servant of the railroad company not engaged in operating the train which inflicted the injuries, and another servant of the company who was operating such train, are both joined with the company as parties defendant, the principles of liability are different and distinct as to each of the individuals so joined as defendants, so that neither is liable for the negligence of the other.

2. Master and Servant—Rule of Respondeat Superior—Contributory Negligence.

Negligence of a servant by which the master becomes secondarily liable under the rule of respondeat superior is primary negligence, but recovery therefor may be defeated by establishing contributory negligence thereafter operating to proximately cause the injury.

3. Same—Doctrine of Last Clear Chance.

Negligence of a servant by which the master becomes secondarily liable under the doctrine of last clear chance is primary negligence, but it exists and operates to fix liability only after contributory negligence has ceased, and after the peril caused by the contributory negligence has been discovered.

4. Same—Crossing Accident—Instructions—Inconsistent Theories.

In such an action, where the instructions of the court commingle and confuse these two distinct and inconsistent theories of liability so that the jury is authorized to return a verdict against the servant first mentioned because of negligence of the second servant under the doctrine of last clear chance, notwithstanding contributory negligence may have intervened between the first servant's negligence and the injury, and

which instruction also authorized the jury to return a verdict against the second servant because of the negligence of the first servant, although said second servant did not discover the perilous situation after it arose in time to avert the injury by the use of reasonable or ordinary care, such instruction is prejudicially erroneous.

5. **Railroads—Crossing Accident — Primary Negligence—Conflicting Testimony—Jury Question.**

Where the question of primary negligence arises upon conflicting testimony as to the speed of a train as it approached a crossing where the injury occurred, and as to the precautions observed by the railroad company to prevent accidents, an instruction which tells the jury as a matter of law that it is the duty of the railroad company's servants operating its train to approach a crossing in a village at a lesser speed than a country crossing would be approached is erroneous, for the reason that when the testimony is in conflict upon the degree of care used or the existence of primary negligence in any case, so that reasonable men might honestly draw different conclusions therefrom, the question of whether the evidence establishes negligence is for the determination of the jury under proper instructions.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by Samuel Bratcher, as administrator, against the Atchison, Topeka & Santa Fe Railway Company, C. D. Edwards, and Oliver Newland to recover damages for the negligent injury and death of plaintiff's intestate. Judgment for plaintiff, and defendants bring error. Reversed.

This action was commenced December 15, 1920, in the district court of Garfield county, Okla., by plaintiff, as administrator of the estate of James Cummins, deceased, against the defendants above named by the plaintiff filing his petition in said court wherein it was alleged, in substance, that on October 19, 1920, between the hours of 12 and 1 o'clock, the said James Cummins and his wife, Minnie A. Cummins, started to return to their home from the town of Nash in their five-passenger Scripps-Booth touring car, which car was being driven by the said James Cummins, both occupying the front seat thereof; that it was necessary for the said James Cummins to cross the railway tracks of the defendant corporation, and that he approached the same from the east on what is known as Grand avenue in the said town of Nash; that in approaching said tracks from the east the view of said railroad tracks to the north and northwest was obstructed by buildings on the north side of Grand avenue, and that on this occasion there was also a work train of the defendant corporation standing upon what is known as the passing track near to and north of said Grand avenue, and that this further obstructed the view of the tracks to the north and northwest; that at the crossing of Grand avenue and the said railway there are three tracks, the one farthest east being known as the passing track, the one next west being the main line track, and the third still farther west being known as the switch or house track; that as the said James Cummins approached said crossing he slowed up his automobile and proceeded cautiously, watching for approaching trains; that C. D. Edwards was conductor on the work train, Harley Moore was a brakeman on said train, and E. J. Fitch was engineer of said work train; that all of the three last named persons were standing close to said crossing and all of them saw the said James Cummins and his wife approach in said automobile, and all of them knew at the time that the mixed train of the defendant company was approaching from the northwest, and that it was dangerous for said James Cummins to attempt to cross said track in front of said approaching train; that the said Moore signaled to the said James Cummins to come on and cross said track, and the said Edwards and Fitch knew of said signal; that after said signal had been given the said James Cummins proceeded to drive his car slowly across said railroad track and the said Edwards, Moore, and Fitch made no effort to stop or prevent him from going upon said track, and that as the said James Cummins reached the main line track said mixed train was rapidly approaching and was being operated by Oliver Newland, its engineer; that said train was behind its schedule and was running at an excessive and dangerous rate of speed; that when said James Cummins saw said train rapidly approaching he and his wife jumped from the automobile and that when the said James Cummins was at a point opposite the left front fender of said automobile the engine of the mixed train struck said automobile on the right side with such force as to throw it against and upon the said James Cummins, inflicting injuries from which death resulted; that it was the duty of the defendant to have established signals or to have stationed employes at said crossing to protect the public, and that its failure so to do was negligence; that it was the duty of the servants, agents, and employes of the defendant company who were at said crossing to have prevented the said James Cummins from at-

tempting to cross in front of said train, and that their failure to do so was negligence; that it was the duty of Oliver Newland to have sounded signals and set the emergency brakes after discovering the perilous position of the said James Cummins and to have thus averted the accident, and that his failure so to do was negligence.

Defendants filed separate answers which were substantially the same and consisted, first, of a general denial, and, second, of special pleas of contributory negligence.

Reply was filed to these answers and trial was had February 19, 1921, resulting in a verdict in favor of the plaintiff and against all of the defendants for the sum of $10,000. Judgment was rendered on this verdict and after unsuccessful motion for new trial defendants have brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

Cottingham, Hayes, Green & McInnis, Frank G. Anderson, and Curran & Kruse, for plaintiffs in error.

Simons, McKnight & Simons, for defendant in error.

Opinion by LOGSDON, C. Only questions of law arising upon instructions given and refused are presented by this proceeding. The first proposition presented questions the correctness of instruction No. 7 contained in the court's general charge to the jury. This instruction reads:

"You are instructed that a railroad company is liable for injuries received by one in attempting to cross the track in front of a moving train even though such person is guilty of contributory negligence, if after discovering his perilous position the employes of the railroad company having charge of its train or who were in a position to prevent the accident, failed or neglected to use all possible effort to avoid the injury."

It is insisted that this instruction (a) improperly submits the doctrine of last clear chance, and (b) imposes a higher degree of care on defendants than the law requires. The first criticism requires a review and consideration of the evidence. For this purpose the evidence as to material and relevant matters will be merely abstracted where there is no substantial conflict, but upon material issues where the evidence conflicts the testimony will be quoted. Briefly stated, the evidence shows without substantial conflict the following facts:

That Grand avenue in the town of Nash is a section line highway extending east and west, and that the line of railway of the A., T. & S. F., where it intersects Grand avenue, extends practically from northwest to southeast; that on October 19, 1920, plaintiff's intestate had been in the town of Nash and in that portion of the town lying east of the railway; that between 12 and 1 o'clock that day deceased started to return to his home about three miles southwest of Nash; that he was accompanied by his wife, both occupying the front seat of a Scripps-Booth touring automobile; that their route was along Grand avenue and across the railway tracks to and through the west part of town; that deceased was driving; that at the railroad crossing the first track on the east was what is known as the passing track; next west, and with eight feet, ten inches intervening, is the main line track, and 30 or 40 feet west of the main line track is a switch track; that approaching the intersection from the east the view of the railway tracks to the right, or north of Grand avenue, is obstructed by buildings for a distance of about 215 feet east of the passing track; that on this day the passing track immediately north of Grand avenue was occupied by a work train which obstructed the view of the main line track to the north until one traveling west was upon the passing track; that the local, or mixed passenger and freight train, was due at Nash from the north about 11:30 a. m., but on this day was an hour late; that as deceased and his wife approached the railroad crossing from the east they were looking and listening for trains; that at or near the passing track a member of the crew of the work train signaled them (as to the character of this signal and its result the testimony is in conflict and will be quoted later); that as the automobile of deceased crossed the passing track the incoming local train was about 250 feet north of the crossing and approaching at a speed of about 20 miles per hour; that the automobile of deceased was not visible to the fireman on the local until such automobile was upon the passing track, and was not visible to the engineer, by reason of the locomotive boiler, until it was at or upon the main line track; that as the automobile was upon or leaving the passing track another member of the work train crew called to and signaled the deceased; that when the front wheels of the automobile were upon the main line track the deceased set the emergency brake with the car in high gear; that the local train whistled for the station, and again for the crossing at the points designated for such signals, and that the bell was ringing as it approached; that when the engineer saw the automobile roll on to the

main line track he simultaneously sounded the danger whistle and set the emergency brakes on train and engine; that the wife of deceased immediately got out of the car on the right side toward the approaching train, while deceased got out on the left side away from the train; that a man standing on the sidewalk on the left or south side of the automobile ran around the rear of the car, caught hold of deceased's wife and dragged her back to the passing track out of danger; that the engine struck the automobile just back of the right front wheel, causing it to strike and kill deceased; that the train was stopped after ten or twelve cars had passed the crossing.

As to what occurred as deceased approached the passing track from the east, Mrs. Cummins testified for plaintiff on direct examination:

"A. Mr. Cummins and I were leaving town. We were driving west, and as we came about half way between the old livery stable and the grain office he slowed his car down and he says: 'Look out for the train.' Just as he said that the train force, one of the men on the north side of the road, signalled for us to come on. Q. One of the railroad men that was standing on the north side of the track? A. Yes, sir, and indifferently walked on east just like nothing was wrong. Mr. Cummins just drove slowly on as he had. We hadn't stopped." (C. M. p. 108.)

Mildred Dunham testified for plaintiff and on this point said:

"A. Well, I saw them come up in the car and then they stopped about where the switch is. Q. Do you mean the passing track? A. Yes, the passing track it is called. They stopped there." (C.-M. p. 151.)

R. A. Moore, called by defendant, testified:

"A. I stopped in the crossing at the passing track when I saw this man Cummins coming, and I flagged him. Q. What do you mean when you say you 'flagged' him?' A. I stood in front of him and did this way to him to stop. (Witness indicates by motion of hands.) Q. Did he stop when you did that? A. Yes, sir; he did. He stopped then." (C.-M. p. 505.)

W. J. Dempsey, for defendant, testified:

"Q. Was the automobile stopped or was it moving when you first saw it? A. It was stopped at the time. Q. Where was it when you first saw it? A. Well, it was back of the crossing. Q. What do you mean by 'back of the crossing.' Do you mean that it was beyond the passing track? A. Yes, sir; it was when it stopped." (C.-M. pp. 573-4.)

Contributory negligence in this state is always a question for the sole consideration and determination of the jury, but when found to exist precludes recovery. In this and other jurisdictions the rigorous application of the rule against recovery where contributory negligence is shown has been ameliorated in proper cases by the adoption and application of what is euphoniously termed the "humanitarian" or "last clear chance" doctrine. This is but a variation of the doctrine of comparative negligence, which has long since been expressly repudiated in this state. St. Louis & S. F. Ry. Co. v. Elsing, 37 Okla. 333, 132 Pac. 483. Therefore, before the doctrine of last clear chance can be applied in any case it must appear either that the primary negligence of the defendant continued after the contributory negligence of plaintiff ceased, or that some new primary negligence of the defendant intervened between the cessation of the contributory negligence and the infliction of the injury. If the primary negligence and the contributory negligence are co-existent and contemporaneous the doctrine of last clear chance has no application. It cannot then be said that the primary negligence is the proximate cause of the injury. White on Personal Injury, vol. 1, par. 526; Shearman & Redfield on Negligence, vol. 1, par. 99; A., T. & S. F. Ry. Co. v. Baker, 21 Okla. 51, 95 Pac. 433; Clark v. St. L. & S. F. Ry. Co., 24 Okla. 764, 108 Pac. 361; M., O. & G. Ry. Co. v. Lee, 73 Oklahoma, 175 Pac. 367. As is said in White on Personal Injury, vol. 1, p. 526:

"This rule does not exempt the injured person from the consequences of his own contemporaneous negligence, which is an immediate, direct and proximate cause of the injury. When the carelessness of both parties is contemporaneous and the injury results from the mutual want of care on their part, then no recovery can be had under the humanitarian doctrine."

In this case the deceased was not in a position of peril until he left the passing track and killed his engine upon the main line track by setting the emergency brake while his car was in high gear. The exact distance of the train from the crossing at this instant is not shown, but its nearness may be visualized from the testimony of plaintiff's witness, Cecil Hayes, who was standing on the south side of the crossing between the house track and the main line track, and whose attention was centered on the automobile and its occupants. He testified:

"A. * * * When he stopped, his wife or something—anyway, he noticed the train, and she jumped and he had to make three

or four grabs at the door. Of course, by the time he got out of the car, he just started to take a step to go off, and the train hit the car and the car hit him. Q. You say, he just got out of the car? A. He just got out of the car and was ready to take a step and the car hit him. Q. He hadn't got away from the car? A. No, he never got off the track." (C.-M. p. 138.)

Whether his act in going upon or attempting to cross the main line track under the circumstances shown by the conflicting testimony in the record constituted contributory negligence was a question solely for the jury to determine, but whether the doctrine of last clear chance, involving necessarily the element of primary negligence, was applicable was purely a question of law for the court. As stated by Judge Ames in the case of Midland Valley R. Co. v. Bailey, 34 Okla. 193, 124 Pac. 987, at page 198:

"It is manifest that, if the jury is the sole judge of the question of negligence, the law is as uncertain as the opinions of different juries. * * * The law is fixed, is stable, is not subject to change according to the variable opinions of any particular twelve men, but represents the wider concensus of opinion of the entire people, and it is the peculiar function of the court to know the law and to inform the jury, so that in the exercise of its duty of applying the law to the facts it may have a stable rule of action to aid it in the administration of justice, and the law of this state does not relieve the courts of this duty."

Plaintiff established the fact by his evidence that his intestate could not see the approaching train until his automobile was upon the passing track, and this proof also established the converse proposition, viz., that the railroad defendant's servants in charge of its incoming train could not see and know that deceased was about to place himself in a position of peril until the automobile was upon the passing track. From this instant of discovered peril the negligence of defendant railroad and of defendant, Oliver Newland, must be based upon the acts or omissions of its servants in charge of its train, and the performance or nonperformance of its legal duty toward deceased must be determined thereby. Its servants in charge of the stationary work train, after the perilous situation was created, bore no other or different relation to the proximate negligence, under the last clear chance doctrine, than did strangers and bystanders. In other words, the rule of respondeat superior and the doctrine of last clear chance cannot both operate at the same time as to all of these defendants. Under the former rule the liability of the railroad was dependent upon the actionable negligence of members of the work train crew, one of whom was made a party defendant. Chicago, R. I. & P. Ry. Co. v. Reinhart, 61 Okla. 72, 160 Pac. 51; St. Louis & S. F. R. Co. v. Dancey, 74 Oklahoma, 176 Pac. 209. But the individual defendant, Newland, who was engineer of the incoming train, could not be legally be held liable for such negligence of the work train crew. Under the latter doctrine the individual defendant, Edwards, who was conductor of the work train, could not legally be held liable for negligence of the crew of the incoming train, if there was any. Yet by this instruction those who might be liable under the rule of respondeat superior, and those who might be liable under the last clear chance doctrine were hodgepodged together and placed in the category of joint tort-feasors without distinction as to the rules of liability applicable to each.

These two rules might be coexistent and contemporaneous in their operation were the law such that under the doctrine of last clear chance the railroad's duty began, not when the peril was discovered, but when it might have been discovered. But such is not the law. Clark v. St. L. & S. F. Ry. Co., 24 Okla. 764, sp. cit. 774, 108 Pac. 361; St. L. & S. F. Ry. Co. v. Clark, 42 Okla. 638, sup cit. 644, 142 Pac. 396; Oklahoma City Ry. Co. v. Barkett, 30 Okla. 28, 118 Pac. 350; St. L. & S. F. Ry. Co. v. Kral, 31 Okla. 624, 122 Pac. 177 . Yet the rule of respondeat superior and the doctrine of last clear chance were commingled in this instruction in such manner that the jury was authorized to determine that if the members of the work train crew could have prevented the injury by interposing themselves between the crossing and the approaching automobile, and failed to do so, then recovery was justified under the doctrine of last clear chance, even though contributory negligence was present and actively operating only a few seconds before the collision. This was manifest error. Not only did it confuse two distinct and conflicting rules of liability, but its effect was to nullify instructions 10 and 13, which defined contributory negligence. It permitted recovery for negligence of the work train crew, even though contributory negligence thereafter operated to proximately cause the injury. The law is to the contrary. St. L. & S. F. Ry. Co. v. Hess, 34 Okla. 615, 126 Pac. 760; Clinton & O. W. Ry. Co. v. Dunlap, 56 Okla. 755, 156 Pac. 654; Wichita Falls & N. W. Ry. Co. v. Cover, 65 Okla. 110, 164 Pac. 660; Missouri, K. & T. R. Co. v. Stanton, 78 Okla. 167, 189 Pac. 753.

Plaintiff made no effort to show negligence on the part of those operating the in-

coming train after they discovered the perilous position of his intestate. It is shown without conflict or contradiction that as the automobile came in view on the passing track the engineer instantly sounded the danger whistle and set the emergency brakes; that the locomotive was then about 250 feet from the crossing; that the train was running about 20 miles an hour; that the air connections and brakes on train and engine were in perfect condition, and that the collision was unavoidable after the automobile was discovered by the fireman and engineer. With the record in this condition the doctrine of last clear chance should not have been submitted to the jury. Buss, Admx, v. C., R. I. & P. R. Co., 77 Okla. 80, 186 Pac. 729; Missouri, O. & G. Ry. Co. v. Lee, 73 Oklahoma, 175 Pac. 367; C., R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 Pac. 250. Even had it been proper to submit it, prejudicial error was committed by the manner in which the rule of respondeat superior was confused with it, thus, in effect, withdrawing the question of contributory negligence from the jury.

The second criticism of this instruction is also well founded. Reliance is placed upon a certain expression appearing in the body of the opinion in Buss, Adm'x, v. C., R. I. & P. Ry. Co., supra, to sustain the language of this instruction. That language is this:

"The last clear chance rule does not apply where the defendant does not discover the exposure to danger in time to prevent the accident. It applies where the employes having charge of the train fail or neglect **to use all possible effort** to avoid the injury after discovering the exposure to danger."

This last sentence of Justice Owen was obiter in that case. It was not necessary to the decision, because he held that the doctrine of last clear chance was not applicable. The language underscored above was evidently used inadvertently, because the authorities cited to support it are: St. Louis & S. F. R. Co. v. Clark, 42 Okla. 638, 142 Pac. 396; Atchison, T. & S. R. Co. v. Baker, 21 Okla. 51, 95 Pac. 433; Denver City Tramway Co. v. Cobb, 164 Fed. 41; Atchison, T. & S. F. R. Co. v. Taylor, 196 Fed. 878. None of these cases justify that language, but the degree of care required by them is reasonable or ordinary care. That is the generally accepted rule. In Shearman & Redfield on Negligence, vol. 1, par. 99, it is said:

"It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him."

The second proposition presents alleged error of the trial court in refusing the requested instructions of defendants numbered 10 and 20. Instructions 10 and 13 given by the court fairly submitted the issue of contributory negligence to the jury, and since the requested instructions covered by this proposition were directed to the same question it is not considered that any prejudicial error resulted to the defendants by the refusal of said requested instructions.

Under the third proposition defendants complain of the refusal of the court to give their requested instruction No. 14, which amounted to a withdrawal from the consideration of the jury of the doctrine of last clear chance. In view of the conclusion reached upon the first proposition herein this error, if it was error, will not arise upon a retrial.

Defendant's fourth proposition complains of error of the court in giving instruction No. 2. This instruction stated to the jury, in substance, that it is the duty of a train crew to approach a crossing within the limits of a town at a lesser rate of speed than in approaching a country crossing. This is deemed to be erroneous for the reason that where the evidence is conflicting as to acts or omissions alleged to be negligent, and reasonable men might honestly draw different conclusions therefrom, the question of whether a certain state of facts or certain acts or omissions constitute primary negligence is a question peculiarly within the province of the jury to determine. Taliaferro v. Atchison, T. & S. F. Ry. Co., 61 Okla. 27, 160 Pac. 69; Chicago, R. I. & P. Ry. Co. v. Schands, 57 Okla. 688, 157 Pac. 349; City of Woodward v. Bowder, 46 Okla. 505, 149 Pac. 138; Rock Island Coal Mining Co. v. Davis, 44 Okla. 412, 144 Pac. 600. In this case the verdict was returned by nine jurors.

The fifth and seventh propositions complain of matters which are in the same attitude as those complained of under the third proposition, and in view of the conclusion reached on the first proposition herein will not likely arise on a retrial.

Under the sixth proposition defendants complain of the court's action in modifying an instruction requested by them and in giving said instruction as modified. The error complained of in this action of the court is not apparent upon the face of the record, and it is considered that defendants have

not sustained the burden resting upon them of showing wherein such action of the court was prejudicially erroneous.

For the reasons herein stated, it is concluded that the judgment of the trial court herein should be reversed, with directions to grant the defendants a new trial of this action.

By the Court: It is so ordered.