POLLARD, RESPONDENT, v. OREGON SHORT LINE RAILROAD CO., APPELLANT.

(No. 6,922.)

(Submitted March 16, 1932. Decided April 25, 1932.)

[11 Pac. (2d) 271.]

Mr. *John E. Corette* and Mr. *Francis P. Kelly,* for Appellant, submitted a brief; Mr. *Corette* argued the cause orally.

124

*Mr. J. J. McCaffery* and *Mr. A. G. Shone,* for Respondent, submitted a brief; *Mr. Shone* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, the Oregon Short Line Railroad Company, a corporation, has appealed from a judgment against it and in favor of the plaintiff, William Pollard, in a personal injury action.

The complaint originally contained two counts; the first based on primary negligence; the second grounded on the last clear chance doctrine. The defendant interposed a general demurrer to each count, and, on the overruling thereof, answered, joining issue as to the allegations of the complaint, and pleading contributory negligence as a special defense. Plaintiff replied, and the cause came on regularly for trial to a jury; whereupon defendant objected to the introduction of any evidence on the ground that the complaint does not state facts sufficient to constitute a cause of action, which objection was overruled.

At the close of plaintiff's case defendant moved for a nonsuit; whereupon plaintiff withdrew the first count of the complaint, and stood upon the theory of the last clear chance. The motion was overruled, and, at the close of the taking of testimony, defendant moved for a directed verdict, which motion was denied. The jury was instructed and later returned a verdict for plaintiff, awarding him damages in the sum of $2,900, on which judgment was entered. Thereafter plaintiff moved for a new trial, which motion was overruled.

The defendant has made numerous assignments of error which, jointly and severally, raise the questions hereinafter discussed.

1. The first question for consideration is that of the sufficiency of the complaint, which contains the following allegations: That, "in clear daylight," the plaintiff drove a Ford delivery truck downgrade on a highway to a grade crossing, and, in doing so, "carefully looked to the right and to the left," and had ample time to make a safe crossing as no train was in sight, but that, without fault on his part, the truck stalled on the track in such manner that he was unable to move it either forward or backward.

That the defendant, "acting through * * * its engineer and fireman, observed and saw plaintiff, or had they or either of them exercised ordinary care, they would have seen plaintiff in his truck in said position of danger * * * in ample time to have stopped the train," but negligently drove the train "into and upon the plaintiff so stalled in his truck * * * while he was attempting to remove it from the crossing in an effort to avoid injury to defendant's servants and passengers."

It is then alleged that "after the said servants * * * observed the plaintiff's position * * * there being great danger, there was ample time" to have stopped the train and thereby avoided the collision, as the track was clear and unobstructed for more than 1,000 yards between "the point where the said servants * * * first observed plaintiff's condition" and the crossing where he was struck and injured.

Two attacks are launched against the complaint, first, that it alleges observation, or the duty to observe plaintiff in a place of peril in the alternative; and, second, that the complaint does not allege that plaintiff was initially negligent.

The rule is firmly established in this jurisdiction that, in order to state a cause of action under the last clear chance doctrine, the pleader must disclose (1) the exposed condition brought about by the negligence of the plaintiff, or the injured party; (2) the actual discovery by the defendant of the perilous situation of the person or property in time to avert collision; and (3) the failure thereafter of the defendant to use ordinary care to avert the injury.

This rule is applied rigorously in all cases wherein the plaintiff was injured while trespassing on a railroad track and the reason for so doing is plain. In order to state a cause of action for damages for personal injuries, the complaint must always disclose a legal duty owing from the defendant to the injured party, and a negligent breach thereof, resultant damages, and that the breach of the duty was the proximate cause of the injury. (*Griffin* v. *Chicago, M. & St. P. R. Co.*, 67 Mont. 386, 216 Pac. 765; *Ecclestine* v. *Great Northern Ry. Co.*, 58 Mont. 470, 194 Pac. 143.)

The law does not impose upon those in charge of a train the ▆ duty of keeping a lookout for trespassers upon the track between crossings, or at other places where they have no right to be; the only duty owing to such persons is to refrain from wilful or wanton injury, and to exercise reasonable care, after actual discovery of them in such a place, not to inflict injury upon them. (*Egan* v. *Montana Cent. Ry. Co.*, 24 Mont. 569, 63 Pac. 831; *Stricklin* v. *Chicago, M. & St. P. R. Co.*, 59 Mont. 367, 197 Pac. 839.)

The allegation that a fact is known, or in the exercise of ▆ reasonable care should have been known, is, like a chain, no stronger than its weakest link and, at best, charges that the fact should have been known (*Dickason* v. *Dickason*, 84 Mont. 52, 274 Pac. 145); consequently, in trespass cases, an allegation in the alternative does not disclose a legal duty, for, as the trainmen owed no duty to keep a lookout, they were not in duty bound to know that which they would have known had they kept such a lookout.

These are the fundamental principles underlying the declaration that, in order to invoke the "last clear chance doctrine," the complaint must allege actual discovery. (See *Melzner* v. *Northern Pac. Ry. Co.*, 46 Mont. 162, 127 Pac. 146; *Haddox* v. *Northern Pac. Ry. Co.*, 46 Mont. 185, 127 Pac. 152; *Dahmer* v. *Northern Pac. Ry. Co.*, 48 Mont. 152, 136 Pac. 1059, 1062, 142 Pac. 209; *McIntyre* v. *Northern Pac. Ry. Co.*, 56 Mont. 43, 180 Pac. 971; *Stricklin* v. *Chicago, M. & St. P. R. Co.*, supra.)

128

While many courts have assumed that the foregoing rules ▮ apply in all cases wherein the doctrine is invoked and, therefore, require the allegation and proof of "actual discovery" in crossing cases ` (*Wheelock* v. *Clay*, (C. C. A.) 13 Fed. (2d) 972; *Pennsylvania R. Co.* v. *Swartzel*, (C. C. A.) 17 Fed. (2d) 869; *Haber* v. *Pacific Electric Ry. Co.*, 78 Cal. App. 617, 248 Pac. 741; *Emmons* v. *Southern Pac. Co.*, 97 Or. 263, 191 Pac. 333; *Atchison etc. Ry. Co.* v. *Bratcher*, 99 Okl. 74, 225 Pac. 941; *McFarland* v. *Chicago, M. & St. P. Ry. Co.*, 51 S. D. 85, 212 N. W. 493), "according to the better view with reference to crossings—as distinguished from injuries to trespassers and bare licensees upon railway tracks at places where they have no right to be—the servants of the railway company are bound to keep a vigilant lookout in front of the advancing engines or trains, to the end of discovering persons exposed to danger on the highway crossings; and the railway company will be liable for running over them if, by maintaining such a lookout, and by using reasonable care and exertion to check or stop its trains, it could avoid injuring them." (Thompson's Commentaries on the Law of Negligence, sec. 1629; 2 Shearman & Redfield on Negligence, 5th ed., 783.) The duty to keep a lookout includes the duty to see that which is in plain sight. (*Southern Ry. Co.* v. *Bailey*, 110 Va. 833, 27 L. R. A. (n. s.) 379, 67 S. E. 365; *Roberts* v. *Chicago, M. & St. P. Ry. Co.*, 67 Mont. 472, 216 Pac. 332; *Johnson* v. *Herring*, 89 Mont. 156, 295 Pac. 1100.)

In this class of cases, as distinguished from trespass cases, ▮ "the sound principle then is that the defense of contributory negligence is not available where the defendant was guilty of a negligent act or omission subsequently to the time when he ought to have known that the negligence of the plaintiff or the person injured had created a position of peril" (1 Thompson's Com. on the Law of Negligence, 224, and cases cited); "a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of plaintiff's peril or unaware of it only through carelessness, had in fact a later opportunity than the plaintiff to avert an accident." (*Kan-*

*sas City Southern Ry. Co.* v. *Ellzey,* 275 U. S. 236, 72 L. Ed. 259, 48 Sup. Ct. Rep. 80, 81.)

This last declaration is in harmony with what is said in *Neary* v. *Northern Pac. Ry. Co.,* 37 Mont. 461, 19 L. R. A. (n. s.) 446, 97 Pac. 944, and in *Doichinoff* v. *Chicago, M. & St. P. Ry. Co.,* 51 Mont. 582, 154 Pac. 924, as the latter opinion is explained in *Stricklin* v. *Chicago, M. & St. P. Ry. Co.,* supra.

On this class of cases, therefore, the allegation and proof in the alternative, as here, is sufficient. (*Norfolk Southern R. Co.* v. *Crocker,* 117 Va. 327, 84 S. E. 681; *Nicol* v. *Oregon-Washington Ry. & Nav. Co.,* 71 Wash. 409, 43 L. R. A. (n. s.) 174, 128 Pac. 628; *Mosso* v. *E. H. Stanton Co.,* 75 Wash. 220, L. R. A. 1916A, 943, 134 Pac. 941; *Teakle* v. *San Pedro, L. A. & S. L. Ry. Co.,* 32 Utah, 276, 10 L. R. A. (n. s.) 486, 90 Pac. 402; *Knutson* v. *Oregon Short Line R. Co.,* (Utah, 1931) 2 Pac. (2d) 102; *Bogan* v. *Carolina Cent. R. Co.,* 129 N. C. 154, 39 S. E. 808, and note 55 L. R. A. 418.)

Regarding the second attack upon the complaint, it is urged ▮ that, as the complaint negatives negligence on the part of the plaintiff in approaching the track, and alleges that the truck stalled without his fault, it fails to show that the exposed condition of plaintiff was brought about by his own negligence, as required by the above rule regarding the showing necessary to bring a case within the last clear chance doctrine.

Here the negligence shown is not in the particulars mentioned, but consists in plaintiff's remaining in the truck after it stalled, in an effort to get it off the track. This is comparable to the situation upon which comment is made in the *Neary Case,* supra, wherein the court found negligence in the deceased's absorption in his work to the extent of rendering him oblivious of the approach of the dangerous instrumentality.

In the *Dahmer* opinion, supra, the court applied the doctrine, although the plaintiff's peril was not brought about by his initial negligence, declaring "a person, however, may be

put in a position of peril by circumstances for which he is not responsible, and for this reason is not chargeable with antecedent negligence, * * * yet, if those in charge of a train discover his situation * * * while it is still within their power, by the exercise of ordinary care, to stop the train, they must do so, under the penalty of making themselves and their employer liable."

The complaint before us is sufficient to withstand the general demurrer interposed.

2. The next contention, under various assignments of error, is that the evidence is insufficient to justify the verdict and judgment.

It is here argued that this action is not concerned with the truck, and that, even though the circumstances might warrant a finding that the engineer saw the truck, there is no evidence that he saw the plaintiff; that plaintiff failed to prove that he was in a position of peril at any time when, by the exercise of care, the engineer could have avoided the collision, as, up to the moment before the collision, plaintiff was hidden from view; that he voluntarily placed himself in a position where he could not be seen.

Plaintiff's case was made by proof of the following facts and circumstances: The accident happened at the Williamsburg crossing southwest of Butte, to the west of which there is a clear view of the track for approximately 800 yards, or about half a mile, and, conversely, the engineer had a clear view of the crossing while driving his engine that distance; he was traveling at from 27 to 30 miles an hour, and could stop his train within 450 to 475 feet. Thus it is demonstrated that the engineer, who was keeping a constant lookout, should have seen the truck at the crossing while at a distance of approximately five times that in which he could have stopped his train, and could have averted the accident after he had proceeded four-fifths of the distance between his first view of the crossing and the point of collision. He applied his brakes when within 80 feet of the truck, struck it, and stopped the train some 400 feet beyond the crossing.

The plaintiff was driving a Ford delivery truck with a cab at the front, but without doors; as he approached the crossing he looked to left and right; there was no train in sight. As his truck got upon the track his engine died and the truck stalled; he was unable to move it backward or forward; he looked up and down the track and still there was no train in sight. Plaintiff thought the trouble was in the "coils" as he had had similar trouble before; he decided that he must get the truck from the track since it might wreck any train that might pass; he went down on one knee with his head under the dashboard and began checking the coils, thereafter paying no attention to anything but the work in hand. He heard no whistle, no bell, but suddenly he heard "an awful roar," looked up and saw the train almost upon him; he attempted to jump but was too late; he was thrown from the track with the truck and received serious injuries. Plaintiff estimated the time he was working on the coils before the accident as "about a minute." There is nothing in the record to warrant the assertion that the engineer, seeing the truck, could not see the plaintiff in it.

In all probability many of the jurors were familiar with the construction of an open Ford truck, and knew of the limited amount of space between the driver's seat and the dashboard and that under the dashboard. In the absence of proof to the contrary, the jury was justified in assuming that, with the truck standing across and at right angles to the track and having no door, at 500 feet or more the engineer, seeing the truck, could and did see the plaintiff kneeling between the seat and the dashboard. This fact was provable by circumstantial evidence. (*Doichinoff* v. *Chicago, N. & St. Paul Ry. Co.,* supra; *Fisher* v. *Butte Electric Ry. Co.,* 72 Mont. 594, 235 Pac. 330; *Westerdale* v. *Northern Pac. Ry. Co.,* 84 Mont. 1, 273 Pac. 1051.)

Clearly, the plaintiff was in a place of peril, and under circumstances invoking the last clear chance doctrine under the authority of the Neary and Doichinoff decisions, above, and it is manifest that, had the engineer set his brakes at any time

up until he reached a point less than 500 feet west of the crossing, he could have averted the accident and injury.

It is to be noted that the engineer did not say that he saw the truck but did not know that it was occupied. Had he done so and offered the excuse that he acted on the assumption that it would be less expensive to the defendant to wreck an old truck than to "dynamite" his train, a different question would be here presented. His explanation is that he saw the plaintiff driving his truck and approaching the crossing simultaneously with the approach of the train and saw that plaintiff was not going to stop too late to stop the train. His story is supported by the testimony of the fireman who sat at the opposite window looking ahead and who said that he saw nothing on the crossing. However, this testimony but created a conflict in the evidence; the jurors were at liberty to believe the engineer when he said he was keeping a vigilant lookout and did see the plaintiff in his truck, and to disregard his testimony as to where the truck was, in favor of plaintiff's statement that the truck was stalled upon the track before the train rounded the curve half a mile away; as there is abundant testimony to support its implied finding, the verdict and judgment cannot be disturbed on the ground here urged.

3. It is next contended that the judgment cannot stand for the reason that the negligence of the plaintiff was contemporaneous, concurrent, continuing, and contributory.

It is true that this court has recognized the rule that, where an accident is the result of negligence of the plaintiff concurring with the primary negligence of the defendant up to and producing the injury, there is no room for the application of the last clear chance doctrine (*Melzner* v. *Northern Pac. Ry. Co.*, supra; *Mihelich* v. *Butte Electric R. Co.*, 85 Mont. 604, 281 Pac. 540), but the doctrine presupposes negligence on the part of the plaintiff and attaches in spite of such negligence when there is a break in the sequence of events. Here, as in the *Neary Case*, the plaintiff remained passive and oblivious of his danger, because of his preoccupation in the work at hand, and thereafter, according to the implied findings of the jury,

the engineer discovered his perilous situation in time to have avoided the accident, but did not employ the means at his command to avoid it, and "the defendant's last act of negligence becomes the sole proximate cause of the injury, while his initial negligence and the primary negligence of the defendant become but remote causes thereof." (*Neary* v. *Northern Pac. Ry. Co.*, supra.)

In *Mosso* v. *E. H. Stanton Co.*, supra, it is said that, on discovery of plaintiff's position of peril, a new duty on the part of the person in charge of the instrumentality arises. It is only after this new duty has arisen and is breached that concurrent negligence on the part of plaintiff makes the doctrine under consideration inapplicable; a new negligence on the part of the plaintiff; a showing that, up to the moment of collision, he was "actively at fault." (*Holmes* v. *South Pac. Coast Ry. Co.*, 97 Cal. 161, 169, 31 Pac. 834.)

Many cases, on the fact conditions shown, indicate or declare that the continuing contributory negligence of the injured party takes the case out of the rule of the last clear chance, unless it is shown that for some reason he is in a position wherein it is physically impossible for him to extricate himself; but this is not in accord with the declarations of this court in the *Neary* and *Doichinoff Cases*, nor with holdings in other jurisdictions wherein the showing is that the injured party might have extricated himself but did not do so, it being held that the sufficiency of the reason shown is for the jury. (*Hillebrant* v. *Manz*, 71 Wash. 250, 128 Pac. 892; *Bruggeman* v. *Illinois Cent. R. Co.*, 147 Iowa, 187, Ann. Cas. 1912B, 876, 123 N. W. 1007; *Miller* v. *Central Vermont Ry. Co.*, 95 Vt. 69, 113 Atl. 524; *Mosso* v. *E. H. Stanton Co.*, supra.)

The evidence is sufficient, if believed by the jury, to warrant the implied finding that the plaintiff was so absorbed in his efforts to get the truck off the track for the protection both of the truck and the rolling stock and passengers of the defendant as to bring the case within the rule announced in

the *Neary Case,* and thus render the doctrine of the last clear chance applicable.

4. It is next asserted that the court erred in giving its instruction numbered 13, which reads as follows: "If you find from a preponderance of the evidence * * * that the engineer in charge of defendant's train, at the time mentioned * * * was in a position where he could have seen plaintiff's truck stalled upon the railway crossing, if you find that it was so stalled, this is a circumstance you may take into consideration in determining whether or not the servant of the defendant, its engineer, saw the plaintiff in time to have averted the injuries complained of by the plaintiff. The law presumes that a person looking down the track in the position of the engineer, if you find he was looking down the track, should have seen what was in plain sight to be seen."

In view of what has been heretofore said, and the fact that actual discovery may be proved by circumstantial evidence, the giving of the instruction did not constitute error.

5. Finally it is contended that the verdict is against law in that the jury disregarded instruction numbered 14, which is that "if you find from the evidence that the plaintiff, had he looked and listened, ought to have heard the warnings and signals of the train, if any were given, and that if he had exercised reasonable care he would have heard said warnings and signals, if any were given, and would have seen the locomotive and heard the noise created by the rapidly moving train, in time to avoid the accident, then and in that event your verdict should be for the defendant."

Standing alone, this instruction would justify the contention of defendant, but the instructions must be read as a whole. The court in its instructions covered every phase of the case, and this instruction was given in connection with those on contributory negligence as a bar to recovery, ordinarily, and concurrent continuing negligence as rendering the last clear chance doctrine inapplicable. However, the court fully instructed the jury on that doctrine, and, when read as a whole with their qualifications and applied to the evidence which the jury might

or might not believe, it cannot be said that the law, as a whole, as given to the jury, was violated by the verdict rendered.

No reversible error appearing in the record, the judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.