HILDA GUSTAFSON, PLAINTIFF AND APPELLANT, v. NORTHERN PACIFIC RAILWAY COMPANY, A WISCONSIN CORPORATION, R. M. CAIN, L. E. MESKE, AND L. S. HATCHER, DEFENDANTS AND RESPONDENTS.

No. 9994.
Submitted January 14, 1960. Decided March 16, 1960.
As amended on Denial of Rehearing, April 20, 1960.
351 Pac. (2d) 212.

156

Goldman & Jordan, Missoula, for appellant. Lee A. Jordan argued orally.

Smith, Boone & Rimel, Missoula, for respondents. Russell E. Smith argued orally.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

This action was brought by plaintiff, Hilda Gustafson, in her own right as the mother and only heir at law of James Gustafson, deceased, to recover damages for the death of her son, which, it is charged, was caused by the negligence of the defendant railway corporation and its agents, defendants, R. M. Cain, the engineer, and brakemen, L. E. Meske and L. S. Hatcher.

Defendant railway owns and operates railroad yards in Missoula, Montana, and trackage east and west of that city. Ap-

proximately nine-tenths of a mile west of Missoula a gravel road crosses the Northern Pacific tracks at what is called the Grant Creek Crossing. This road joins U. S. Highway 10-93 south of the crossing, which highway parallels the trackage for some distance westward from Missoula.

At approximately 11 p. m. on February 21, 1955, deceased was traveling in his 1951 GMC pickup truck in a southerly direction on the aforementioned gravel road toward the Grant Creek Crossing. The weather was cold, and visibility was good notwithstanding a light fall of snow. As deceased proceeded onto the crossing, his truck suddenly stopped with its rear portion resting on the westbound main line tracks, there being more than one set of tracks at this crossing. Deceased had been operating his pickup truck by crossing the ignition wires for some time and it was believed that the wires parted when the truck proceeded onto the crossing, causing it to stop.

At this same time, a freight train operated by defendants was proceeding westward from Missoula on the westbound main line at a speed of between 25 and 30 miles per hour. The individual defendants, the crew of this train in the cab of the diesel engine pulling the freight, testified that the whistle was sounding, the bell ringing, and headlights were glaring, including the oscillating "Mars" light. The train failed to stop in time to avoid striking the deceased's pickup truck and he was killed in the collision.

The case was tried on the theory of the "last clear chance" doctrine, that is, that defendants were negligent in failing to stop the train after they discovered the deceased in a position of peril through his own inattentiveness, notwithstanding the deceased's negligence in placing himself in the position of peril. Judgment was entered for the defendants on a jury verdict, and from such judgment this appeal is taken.

Plaintiff has made numerous specifications of error and defendants have made cross specifications. The contention of plaintiff which we deem most worthy of consideration is her

claim that the giving of Instruction 16 was prejudicial error.

Over objection of the plaintiff, the court gave defendants' Instruction 7 as Instruction 16. It reads as follows:

"You are instructed that all persons driving motor vehicles upon the public highways of this state, outside of corporate limits of incorporated cities or towns, where the view is obscure, or when a moving train is within sight or hearing, shall bring said vehicle to a full stop not less than ten nor more than one hundred feet from where said highway intersects railroad tracks within this state before crossing the same, at all crossings where a flagman or a mechanical device is not maintained to warn the traveling public of approaching trains or cars; and if you find from a preponderance of the evidence that the crossing involved in this case is outside the corporate limits of any incorporated city or town, and you further find that no flagman or mechanical device was at the time of said collision maintained at said crossing to warn the traveling public of approaching trains or cars, and if you find that said train was moving within sight or hearing of the deceased, and you further find that deceased failed to bring his truck to a full stop not less than ten nor more than one hundred feet from where said highway intersects said railroad tracks, and you further find from a preponderance of the evidence that the deceased's failure to stop his truck was a proximate cause of the injuries, if any, sustained by him, he is guilty of contributory negligence, and cannot recover and your verdict must be for the defendants."

Plaintiff contends that this instruction amounted to a directed verdict in favor of the defendants, in that it required the jury to find for the defendants if it was shown that deceased was negligent prior to the time he became stalled on the railroad tracks. Plaintiff argues that under the last clear chance doctrine, any negligence of deceased in putting himself in a position of peril is irrelevant if it is shown that the defendants, subsequent to deceased's negligence, had a clear chance to avoid

the accident but negligently failed so to do. Defendants argue that they are not bound by plaintiff's theory, and are entitled to this instruction as a proper one embodying the defense of contributory negligence.

The question thus presented is whether the defense of contributory negligence is available to a defendant in a last clear chance case. The theory of the last clear chance doctrine is simply that a plaintiff may recover, nothwithstanding his own contributory negligence, if it were not his own negligence, but the subsequent negligence of the defendant which was the proximate cause of plaintiff's injuries. It is a rule of common sense. In Davies v. Mann, 10 M. & W. 546, 152 Eng.Rep. 588 (1842), one of the earliest cases utilizing the theory, it was said: "Were this not so, a man might justify the driving over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road."

It is apparent that the contributory negligence of the plaintiff which is not the proximate cause of the injury, is no defense in a last clear chance case. In Neary v. Northern Pacific Ry., 37 Mont. 461, 474, 97 P. 944, 19 L.R.A.,N.S., 446, where defendant's train struck an individual who was standing on their tracks and was inattentive to the oncoming train, this court quoting from 2 Thompson on Negligence, § 1735, said: "Where those who are driving the train fail in the discharge of this duty after discovering the perilous situation of the trespasser, his contributory negligence in getting himself into the dangerous situation is eliminated from the case."

In Melzner v. Northern Pacific Ry., 46 Mont. 162, 181, 127 P. 146, 150, this court said: "But in jurisdictions where the doctrine of the last clear chance prevails, as it does in this state, it is not fatal to a complaint that contributory negligence on the part of the plaintiff appears and a plea of contributory negligence is not a defense if the action is brought upon the theory that, notwithstanding such negligence the defendant

had the last opportunity to avoid the injury, and failed to exercise it."

In Doichinoff v. Chicago, M. & St. P. Ry., 51 Mont. 582, 587, 154 P. 924, 926, it was said: "Defendants' offered instructions B and C might have been pertinent upon the issue of Koleff's contributory negligence; but in this instance *there was no such issue. Plaintiff's last clear chance theory has its origin in the concession that Koleff was guilty of negligence in the first instance.*" Emphasis supplied.

Defendant cites Pollard v. Oregon Short Line R. Co., 92 Mont. 119, 11 P.2d 271, and Mihelich v. Butte Electric Ry., 85 Mont. 604, 281 P. 540, as authority for the contention that contributory negligence is a defense in a last clear chance case. But these cases are not properly so construed. They do point out that should a plaintiff continue to be negligent up to the time of the accident, so that such negligence is a concurring proximate cause of his own injury, then the theory of the last clear chance has no application. In Mihelich v. Butte Electric Ry., supra, 85 Mont. at page 619, 281 P. at page 546, it was said: "Even here the doctrine of contributory negligence is applicable, and, if the negligence of plaintiff concurs as a proximate cause up to and at the time of the accident, the last clear chance doctrine does not apply, since defendant's subsequent negligence is not then the sole proximate cause of the injury."

From what has been said, it is apparent that what is commonly understood as "contributory negligence" is no defense in a last clear chance case, since this theory concedes plaintiff was negligent in putting himself into the position of peril at the outset. However, a defendant may defeat plaintiff's claim by proving that plaintiff was negligent up to the time of the injury and that his negligence was a concurring proximate cause.

In the case at bar, therefore, where there was sufficient evidence to go to the jury on the question of defendant's negligence in avoiding the collision after discovery of deceased's

peril, any negligence attributable to the deceased in failing to stop at the crossing, or for that matter, in driving a truck in an unsafe condition, could not defeat his claim. Consequently, the instruction which directed the jury to find for the defendant if. they should find that deceased was negligent in not stopping at the crossing was clearly erroneous and highly prejudicial, nothwithstanding other instructions which properly informed the jury of the theory of the last clear chance doctrine.

Instructions of similar import have been stricken as improper statements of the law and highly prejudicial in many other cases. See Shaw v. Salt Lake City R. Co., 21 Utah 76, 59 P. 552; Lea v. Southern Public Utilities, 178 N.C. 509, 101 S.E. 19; LaFont v. Bryant, Mo.App.1933, 60 S.W. 2d 415; Hangge v. Umbright, Mo.1938, 119 S.W.2d 382; Spindler v. Wells, Mo. 1925, 276 S.W. 387; Burke v. Pappas, 316 Mo. 1235, 293 S.W. 142.

██ As was said above, a defendant may defeat a plaintiff's claim in a last clear chance case by showing that plaintiff's negligence operated up to the time of the injury as a proximate cause thereof. That a defendant has the burden of proof of this issue is a corollary of the rule that the plaintiff need not prove his freedom from fault. In a normal negligence case, where contributory negligence is a defense, it has long been the rule in this jurisdiction that this defense is an affirmative defense which the defendant must plead and prove. Likewise, in a last clear chance case where a defendant claims plaintiff's negligence was a proximate cause of his injuries in that it operated up to the time of the injury, and that therefore the last clear chance theory is inapplicable, the same burden should rest on the defendant. In both the Mihelich and Pollard cases, supra, the defendants pleaded with particularity the negligence of the plaintiff, and they had the burden of proving the same. In the case at bar, the defendants did not affirmatively allege any such concurring negligence of the deceased. To put this issue properly before the jury,

the defendant might have alleged that the deceased saw and heard the oncoming train of the defendant, but nevertheless negligently remained in his truck in a futile attempt to save it from destruction, thereby causing his own death. Negligence on the part of deceased after he had put himself in the position of peril, and which operated up to the time of the collision as a proximate cause of the injury would be a complete defense. But that negligence toward which Instruction 16 was directed was completely irrelevant.

Since this case must be remanded for a new trial, it would be appropriate to consider other specifications of error.

■ Plaintiff specifies as error the court's refusal to admit in evidence the operating rules of defendant railway. Plaintiff cites numerous cases holding that operating rules are admissible as bearing on the standard of care and on the issue of negligence as a circumstance to be considered by the jury. The plaintiff also urges that the rules were admissible to impeach the testimony of the individual defendants.

Those portions of the operating rules sought to be introduced are as follows:

"Within yard limits second and inferior class trains and engines must move at restricted speed."

"Restricted Speed. Proceed prepared to stop short of train, obstruction, or anything that may require the speed of a train to be reduced."

It was shown at the trial that the accident occurred within the yard limits of Missoula, and that the train involved was a second class train.

In the first place, as has been said previously, it is only the negligence of a defendant in avoiding injury which occurs *after* he has discovered the peril of the deceased for which he can be held liable in a last clear chance case. Pollard v. Oregon Short Line R. Co., supra. Consequently, these operating rules, which might have some relevancy as to the standard of care in some cases, have no such relevancy here.

Plaintiff argues that since the individual defendants testified that conditions were normal, she should have been allowed to introduce the aforementioned rules to show that under "normal" conditions (i. e., at a speed which would allow stopping for any obstruction) the train could have been stopped, and hence in some way impeach these witnesses. But none of these witnesses were asked if the speed was normal. They estimated the speed prior to the accident at 25 miles per hour. They did testify that the train was carrying a normal *load*, that it was a normal *train*, that *conditions* were normal. But even if a proper foundation had been laid for impeachment, by asking if the speed were normal, it is doubtful whether the admission of such rules would tend to impeach the credibility of these witnesses. The fact that the train here involved did not stop in time to avoid hitting deceased's truck does not necessarily affect the credibility of the defendants' statements that they were proceeding so as to be prepared to stop short of obstructions. The court did not err in refusing to admit the operating rules in evidence.

Plaintiff also specifies as error the court's action in limiting plaintiff's rebuttal by sustaining defendants' objection to a portion of the testimony of witness Charles Buls.

██ In her case in chief, plaintiff sought to prove the maximum distance that would be required to stop a train such as the one involved in the accident. The defendants, in their case, called three expert witnesses for the purpose of proving the distance required to stop such a train. The evidence adduced from defendants' witnesses differed considerably from that presented in plaintiff's case, and tended to show that a greater distance was required. On rebuttal, plaintiff called a retired engineer, Charles Buls, and sought to get his opinion on the required stopping distance through the use of a hypothetical question. Defendants objected on the ground of improper rebuttal, and the objection was sustained. Plaintiff argues that Buls' testimony was proper rebuttal, in that it

tended to disprove, repel, and counteract the evidence of the defendants. Section 93-5101, R.C.M.1947, requires that after the plaintiff and defendant have presented their case in chief, they will thereafter be confined to rebutting evidence. That which plaintiff sought to introduce through witness Buls was clearly part of her case in chief and was not rebutting evidence, which is confined to that which tends to counteract *new matter* offered by the adverse party. The court properly sustained the objection.

Plaintiff's other assignments of error are not deemed meritorious.

 Defendants' principal cross-assignment of error is that the court erred in overruling defendants' demurrer made on the ground that the complaint did not state a cause of action. More specifically, defendants claim that the complaint was insufficient in that it did not contain an allegation that defendants saw or should have seen plaintiff's inattentiveness. They urge that the mere seeing of a truck stalled on a railroad track is not equivalent to the realization that the driver thereof is in a position of helpless peril or is inattentive to his peril. However, the plaintiff did allege that ''the pickup truck driven by the deceased unexpectedly stalled and stopped running, thus leaving the deceased and his truck stalled directly on the tracks of the defendant corporation in a position of helpless peril'', and ''That because of his preoccupation in trying to get his pickup started, the deceased was unaware of, and oblivious to, the approach of the defendant's train''. The plaintiff alleged further ''that these defendants saw, or by the exercise of reasonable care and vigilance should have seen, the decedent and his pickup truck stalled on the said set of tracks as set forth above.''

In Sorrels v. Ryan, 129 Mont. 29, 32, 281 P.2d 1028, 1030, this court said: ''In considering the sufficiency of the complaint we keep in mind the rule that whatever is necessarily

implied in or reasonably inferable from an allegation must be taken as directly alleged. [Citing cases.]''

We think that the allegation that deceased was oblivious to his peril and that the defendant saw or should have seen the decedent ''stalled on the said set of tracks as set forth above'' is a direct allegation that defendants saw or should have seen the decedent inattentive to his peril. If these allegations cannot be so construed, such can be reasonably inferred therefrom and therefore plaintiff's complaint should stand.

Defendants argue further that the court erred in denying their motions for nonsuit and for a directed verdict. It is defendants' contention that since it was plaintiff's burden to prove that the deceased was inattentive to his peril, these motions should have been granted since plaintiff offered no direct evidence on this point and the evidence relevant to this point indicated that deceased drove onto the tracks and stopped and that the train was within sight and hearing at the time.

It is urged that the direct testimony of engineer Cain, that he saw the deceased momentarily look toward the train prior to the accident, shows that the deceased was in fact not oblivious to the oncoming train.

It is true that plaintiff here has the burden of proving that deceased was oblivious to his peril, and unless there is evidence of his inattentiveness, the motion for nonsuit should have been granted. However, it is difficult to conceive of direct proof of such inattentiveness under the circumstances existing in this case. But we believe the circumstances shown to exist here are sufficient to permit an inference that deceased was inattentive, and even though there is evidence to the contrary, the question of whether the deceased was inattentive was properly submitted to the jury.

In Fair v. Thompson, 240 Mo.App. 664, 212 S.W.2d 923, 928, where an automobile with two occupants was stalled on railroad tracks, and subsequently struck by an oncoming train, causing the death of the occupants, the court said:

"The next assignment of error is that defendant's motion for directed verdict as to each count should have been sustained because the evidence was not sufficient to make a humanitarian doctrine case on charges of negligent failure to sound an audible warning and to stop the train.

"We do not understand that the defendant disputes the proposition that there was sufficient evidence from which the jury could find that no audible warning was given. Rather he takes the position that there was no evidence of obliviousness on the part of the occupants of the automobile and that obliviousness is a necessary element to make a humanitarian case of failure to warn. There is evidence that the deceased were active, agile men; that the doors of the automobile were in good condition, and that the automobile was stalled on the railroad track for at least 14 seconds before the collision, all of which time the trainmen could have seen its position. It is to be presumed that had they known of the train's approach, they would have made an effort to escape from the track. There is nothing to indicate they intended to commit suicide.

"While it is necessary to make proof of facts and circumstances tending to show obliviousness, if plaintiff seeks to rely upon a failure to warn, such burden of proof is met if, from the facts and circumstances, it can be reasonably inferred that the deceased were oblivious of the approach of danger. Obliviousness is but a subsidiary or evidentiary fact; the perilous situation of a party and defendant's knowledge of it are the ultimate, necessary and issuable facts. Perkins v. Terminal R. Ass'n, 340 Mo. 868, 881, 102 S.W.2d 915, 921; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 899. We think there are sufficient facts in evidence from which the jury could infer that the deceased were oblivious of the approach of the train and that this element (obliviousness) of humanitarian negligence of failure to warn has been established."

In light of the circumstances shown to have existed here, that the ignition system of deceased's truck was defective; that

the truck stalled on the track; that deceased was evidently attempting to repair the ignition; that the deceased was a healthy individual not disposed to suicide; that the doors of his truck were not defective; and that there were more than one set of tracks at this crossing, we believe that the court properly submitted the question to the jury and did not err in denying defendants' motions for nonsuit and directed verdict.

For the reasons stated, the judgment is reversed and a new trial ordered.

MR. JUSTICES ADAIR, ANGSTMAN and THE HONORABLE LeROY L. McKINNON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ADAIR:

I agree with the result reached in the foregoing opinion, but not with all that is said therein.

MR. JUSTICE CASTLES dissenting:

I dissent.

I agree with the discussion of the majority opinion as to the defense of contributory negligence in a last clear chance case, but do not agree that Instruction 16 amounted to a directed verdict. From the evidence, the jury may have believed that decedent's negligence in driving without a key and depending on twisted ignition wires was antecedent negligence, but that under the circumstances with a vehicle in that condition, that his failure to stop was the primary and proximate cause of the accident, and that this negligence, in view of the short distance and time involved, was the proximate cause.

In any event, the instructions should be read as a whole and reading them as a whole, Instruction 16 did not amount to a directed verdict. In all other particulars I agree with the majority opinion.