HENRY JESSEN, Plaintiff and Respondent, *v.* THOMAS O'DANIEL, Defendant and Appellant.

No. 9910.

Submitted December 18, 1959. Decided February 5, 1960.

349 Pac. (2d) 107.

514

See **C. J. S.** Motor Vehicles, § 527.

James P. Lucas, Miles City, argued orally, for appellant.

Colgrove & Brown, Miles City, for respondent. Ronald V. Colgrove argued orally.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict for personal injuries which plaintiff sustained as a result of a collision between defendant's truck and plaintiff's auto.

The accident occurred on November 14, 1954, at approximately 3:30 p.m., just inside the city limits of the town of Jordan, Montana. The legal speed limit within the Jordan City limits is 25 miles per hour. The plaintiff was traveling in a westerly direction on Brusett Road approaching the point where it intersects with the Hell Creek Road, both graveled roads and unmarked for traffic control. There was a house on the northeast corner of this intersection, and when plaintiff had passed this house, approximately 60 feet from the intersection, he looked to his right up the Hell Creek Road, could see no approaching vehicles, and proceeded into the intersection without further looking to his right. He signaled for a left-hand turn and was in the southwest corner of the intersection when the truck driven

by the defendant collided with his car. The plaintiff testified that he was traveling about 20 miles per hour as he approached the intersection and about 10 miles per hour while he was making his turn. His testimony indicates that he did see a car approaching from his left and that he continued to look to the left as he made his turn.

Prior to the accident, defendant, accompanied by his son, Howard O'Daniel, Jr., had been driving his truck in a southerly direction on Hell Creek Road. Their testimony indicates they were traveling 25 to 35 miles per hour, and as they came over a crest approximately 200 feet from the intersection they saw the plaintiff, almost in the intersection, approaching from their left. Both the defendant and his son testified that the plaintiff's head was turned toward the south and away from them, and that he continued to look in that direction until the impact occurred. Upon seeing the plaintfif, defendant slammed on his brakes, skidded on all four wheels for a distance of 46 feet, 2 inches before impact, after which his truck slid leaving only left wheel skid-marks, for a distance of 39 feet before turning over on its side.

Damage to the truck was generally on the left-front fender area while the car was damaged along its right side.

One witness, a fifteen-year old boy, was parked along Hell Creek Road and saw defendant drive by. He estimated defendant's speed at 60 miles per hour.

Another witness was traveling north on Jordan Avenue, which becomes the Hell Creek Road north of the intersection with Brusett Road. She saw the truck approaching at a fast rate of speed and noted that it raised a cloud of dust as it approached the intersection, even before the defendant applied his brakes. She watched the truck approach and saw the impact occur, though she failed to notice the plaintiff's vehicle, which she said passed under her vision, until it was actually in the intersection. She also stated that she could not see the truck at all

times because of a swale in the road but that she could see the dust which it raised.

In addition to the house on the northeast corner of the intersection presenting a visual obstruction, the topography of Hell Creek Road causes difficulty to drivers on both the Hell Creek and Brusett Roads. Approximately 610 feet north of the intersection is a low place in the Hell Creek Road which is 2 feet, 3 inches below the intersection. Between this low point and the intersection, the road rises over a small hill and then drops down to the intersection. The crest of this hill is 3 feet, 3 inches above the intersection and 5 feet, 6 inches above the low point in the road. This crest is approximately 200 feet north of the intersection.

The plaintiff stated that when he looked north approximately 60 feet from the intersection he could see about 400 feet up the Hell Creek Road.

Plaintiff suffered severe injuries to his head and knee which, according to medical testimony, will incapacitate him for the remainder of his life. The jury returned a verdict for plaintiff and awarded him damages in the amount of $35,000. There is no question regarding the amount of damages presented by this appeal.

A further discussion of the facts will be made hereafter in discussing the alleged errors.

The appellant sets up seven specifications of error which may be grouped into two categories: (1) Whether the evidence was sufficient to justify the verdict, and (2) Whether certain instructions offered by plaintiff and given by the court, over defendant's objections, constituted reversible error.

The appellant contends that the physical facts clearly illustrate that respondent should have seen appellant's truck approaching from the north, and because of his failure to see what was within his field of vision had he looked carefully, he is guilty of contributory negligence as a matter of law.

As the court stated in Batchoff v. Craney, 119 Mont. 157,

518

█ 168, 172 Pac. (2d) 308, 314, ''Our province is to ascertain whether the evidence viewed in the light most favorable to the prevailing party sustains the verdict.''

With this proposition in mind, let us examine the evidence █ in this case. Plaintiff testified that when he was about 60 feet from the intersection he looked north, being able to see approximately 400 feet of the Hell Creek Road, could see no approaching traffic and proceeded into the intersection. Though appellant contends that plaintiff could in fact see much farther up the Hell Creek Road, we do not consider this of great importance due to the configuration of the road.

Kirk Wier, an engineer produced by plaintiff, testified that after plaintiff passed the house he had an unobstructed view up the hill, but as to the obstruction caused by the hill itself, plaintiff would only be able to obtain a ''faint look at the top'' of the truck behind the hill and for this he would have to ''stop and really look.'' This witness further testified that he ran a ''profile'' on the road.

Another engineer, in testifying for the defendant, stated that he had also run a test using the same truck which had been involved in the accident and could see the truck clearly from a point approximately 1,000 feet north of the intersection. He testified that he could see it continuously as it approached the intersection, at 300 feet being able to see all of the truck above the running board and at 200 feet being able to see the entire truck. Judging from the transcript, what this engineer did was to place a man at 200 feet up the Hell Creek Road and one at 300 feet, then he proceeded to make the observations described above while sitting in his car on the Brusett Road.

The testimony of these witnesses presents an obvious conflict which must be resolved by the jury. Batchoff v. Craney, supra. The jury evidently resolved this conflict in favor of the plaintiff. The conclusion of the jury is further strengthened by the testimony of Mrs. Curry, who was actually present at the scene of the accident and testified that she could not see the truck

during the entire course of its approach toward the intersection because of the "swale" in the road.

A further complication arises from the testimony of Mrs. Curry that the truck continued to raise dust and even though she could not see the truck at all times, she could see the dust. While her testimony is undisputed, it is evident that the jury resolved this question in favor of the plaintiff. In this connection the jury was instructed as follows:

"You are instructed that a driver must look not only straight ahead but laterally ahead and he is bound to operate his automobile with reference not only to conditions he actually sees, but also to those he should see in the exercise of reasonable care, and must have seen or known had he looked. If you find from a preponderance of the evidence that the plaintiff, Henry Jessen, failed in his duty to see what he should have seen, then you must then determine whether such failure to see was negligence. If such negligence proximately caused or contributed to the damages complained of, then the plaintiff, Jessen, cannot recover in this action and your verdict must be for the defendant, regardless of whether or not you find that the defendant was also guilty of negligence."

Assuming that this dust was visible at all times, we are not prepared to say that seeing dust and failing to heed its warning or failure to see dust when it was plainly to be seen constituted contributory negligence as a matter of law. This is a question to be resolved by the jury.

The appellant has cited numerous cases, from other jurisdictions, which have held the plaintiff to be contributorily negligent as a matter of law where he failed to see what was plainly and conclusively to be seen or where he saw but proceeded blindly not taking a further look at the approaching vehicle.

The case cited by appellant, which to our minds most closely approximates the instant case, is Orr v. Hensy, 158 Kan. 303, 147 Pac. (2d) 749, 752. In that case, the plaintiff was ap-

proaching from the east and the defendant from the north on country roads, much like the roads here involved. There was a knoll 400 feet north of the intersection. The plaintiff testified that he looked north when he was 80 to 90 feet from the intersection, could see no vehicles approaching from that direction and proceeded into the intersection, failing to see the defendant until the defendant's car was 20 to 30 feet away from him, at which point neither driver was able to avoid the collision. The jury made special findings of fact, among which was the following:

"5. Q. Approximately how far north of the intersection was Hensy's car when Orr says he looked to the north from a point 80 or 90 feet east of the intersection? A. Approximately 160 to 180 feet."

The testimony was uncontradicted that there were no visual obstructions for 400 feet to the north, and the Kansas Supreme Court held that due to the jury's answer the plaintiff was guilty of contributory negligence as a matter of law, stating: "When a litigant has a duty to look and testifies that he did look but did not see what was plainly to be seen, such ineffectual looking has no more legal significance than if he had not looked at all."

It might be added that the Kansas Court, in this case, "flew in the face" of an earlier decision, involving the plaintiff's wife in which, on the same facts, they refused to find the plaintiff guilty of contributory negligence as a matter of law. Orr v. Hensy, 156 Kan. 614, 135 Pac. (2d) 565.

Under the factual situation of the present case, we have no such special finding of fact, but considering that the jury was properly instructed on contributory negligence, and found for plaintiff, it must be assumed that they resolved all conflicts in testimony in favor of plaintiff, and it is not our province to alter these findings. "Where the evidence is conflicting, but substantial evidence appears in the record to support the judgment, the judgment will not be disturbed on appeal, and this

is especially true when the court, as here, has passed upon the sufficiency of the evidence on motion for a directed verdict and motion for a new trial and upheld its sufficiency." Batchoff v. Craney, supra, 119 Mont. at page 162, 172 Pac. (2d) at page 311, and cases cited therein.

The foregoing discussion applies with like effect to the conflict regarding the speed of the defendant's truck. The appellant contends that the testimony of the highway patrolman as to stopping distances was improper in that he made his estimate of the speed of the truck on the basis of a chart which had a classification for a cinder road, but none for a gravel road. The appellant also attacks the conflict in testimony as to whether he used artificial or natural light in measuring the defendant's skid marks. We do not feel that this is material here, for it is not contended that the highway patrolman measured the skid marks incorrectly.

The alleged impropriety of the testimony as to speed might become important in the absence of any corroborating testimony. In the instant case, however, we have the testimony of two eyewitnesses, one of whom said the respondent was going 60 miles per hour and the other "very fast" or about 50 miles per hour. While it is true that the boy who testified that the truck was going 60 miles per hour had only been driving for a few months, this fact was brought before the jury in cross-examination and it is up to them to judge the weight and credibility of a witness' testimony. The jury was properly instructed on this point.

It is worthwhile to mention here that the speed at which the Highway Patrolman and Engineer Kirk Wier estimated the defendant to be going was much lower, though still over the Jordan city speed limit, than the estimates given by either of the two eyewitnesses.

All in all, viewing the conflicting evidence in a light most favorable to the plaintiff, we feel there was ample evidence to sustain the verdict.

522

The appellant contends that the court erred in giving Instruction No. 29, which reads:

"It was not necessary for the plaintiff to have looked as far as his eyes could reach to his right before proceeding across the intersection. His duty in that respect was performed if he looked sufficiently far to his right to discover that there was no traffic approaching from that direction within a distance that would not be traversed by a vehicle driven at a speed permitted by law. He was not required to look always to his right while crossing or turning in the intersection as he had to avoid endangering traffic ahead of him or approaching from his left."

This instruction is taken from the case of Taxicab Co. v. Ottenritter, 151 Md. 525, 135 A. 587, which case is referred to with approval in Flynn v. Helena Cab & Bus Co., 94 Mont. 204, 21 Pac. (2d) 1105. In the Ottenritter case the court said [151 Md. 525, 135 A. 589]:

"It is contended that the plaintiff is conclusively proved to have been guilty of contributory negligence, because it appears from his own admission that, after passing the north building line of Presbury street he could have seen the taxicab approaching from the west, as the view was clear in that direction for a distance of several blocks. It was not necessary for the plaintiff to look as far as his eye could reach to his right before proceeding across the intersecting street. His duty in that respect was performed if he looked sufficiently far to his right to discover that there was no traffic approaching from that direction within a distance that would be traversed by a vehicle driven at a speed permitted by the law. He was not required to look always to his right while crossing the street, as he had to avoid endangering travel ahead of him, or approaching from his left. * * * Even if the plaintiff, when at the middle of the crossing, had seen the cab approaching from his right at the distance just mentioned, he was not obliged to anticipate that it would approach and enter the intersection at an unlawful rate of speed. * * *

"While it was incumbent upon the plaintiff to respect the rule giving the right of way, at street intersections, to vehicles approaching from the right (Code, art. 56, section 209), yet if the way for a safe distance was clear of traffic coming from that direction, he should not judicially be declared negligent in not providing against the possibility of collision with a car which could not come into dangerous proximity to his own, unless it were unlawfully operated."

We feel that this is a correct statement of the law on this point. A motorist is not required to look for miles up a road in order to ascertain that there are no vehicles approaching. All that is required of him is that he look sufficiently far to be sure that there are no approaching vehicles which, in the mind of a reasonably prudent person, would be likely to cause an accident if he proceeded into the intersection.

The court's Instruction No. 35 is likewise correct. The court instructed the jury that:

"A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another."

The appellant's objection is that this instruction invades the province of the jury. In the instant case the instruction was proper. This instruction is taken from the California Jury Instructions and is usually given with either one of the following paragraphs:

"However, certain circumstances qualify the foregoing rules as follows: A person does not have the rights which they define when it is reasonably apparent to him, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty.

"One is not justified in ignoring obvious danger although it is created by another's misconduct, nor is he ever excused

from exercising ordinary care." (1 Cal. Jur. Inst. Civ. 4th, No. 138, page 334.)

In Koenig v. Coe, 163 Cal. App. (2d) 429, 329 Pac. (2d) 721, 725, the California Court held that the failure to qualify this instruction constituted prejudicial error under the facts of the case. In the Koenig case, the car in which the plaintiff was riding was clearly seen by the defendant approaching a four-way stop intersection at about 50 miles per hour. The defendant, disregarding the approaching car pulled into the intersection and the collision occurred. There was a verdict for the defendant which the appellate court reversed saying: "In other words, the jury could have found that it was reasonably apparent to Coe, or in the exercise of ordinary care should have been apparent to him, that Dietrich was not going to stop at the intersection and, if they so found, that he had no right to rely and act on the assumption that Dietrich would stop, and consequently that Coe was negligent and that his negligence was a proximate cause of the accident. The effect of the instruction as given without the qualification was to tell the jury Coe had the right to assume Dietrich was going to obey all duties imposed on him by law and that Coe had a right to rely and act on that assumption."

In the present case, there was credible evidence which indicated that the plaintiff failed and was unable to see the defendant approaching when he looked to the north. Because of this particular fact situation, we feel that it was not prejudicial error for the court to give this instruction without any qualification.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY, ADAIR and ANGSTMAN concur.