LAWRENCE LAMB and CLARA LAMB, Plaintiffs and Respondents, v. RALPH PAGE and MABEL PAGE and MARGARET M. PAGE, Defendants and Appellants.

No. 11581.
Submitted April 14, 1969.
Decided June 5, 1969.
455 P.2d 337.

Lyman H. Bennett, Jr. (argued), Bozeman, for defendants and appellants.

Lamb & Snyder, Franklin Lamb (argued), Billings, A. E. Sheridan, Waukon, Iowa, for plaintiffs and respondents.

MR. JUSTICE BONNER delivered the Opinion of the Court.

The plaintiffs, Lawrence Lamb and Clara Lamb, brought this action for recovery of damages for personal injury claimed by Clara Lamb and for property damage to the automobile of Lawrence Lamb. Defendants, Ralph Page, Mabel Page and Margaret M. Page, counterclaimed for damages to their automobile and after a jury trial the jury returned a verdict for the plaintiffs in the amount of $6,080. Defendants' motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial were overruled by the district court and they now appeal.

This action arose out of two automobile accidents on the night of January 8, 1967, between the hours of 9 and 10 p.m. on the highway between Willow Creek and Three Forks, Montana. On the evening of January 8, 1967, the highway in question was covered with what is generally referred to in the northwest as black ice, that is, ice which is very difficult to see, through which markings on the pavement are visible, but yet is very slick. The night was such that, in the words of one witness, "it was a hazy type of night where your lights don't penetrate darkness".

Mabel Page, one of the defendants here, was proceeding towards Three Forks when she lost control of the automobile she was driving and left the highway. The point at which the automobile left the highway was just at the beginning of an "S" curve where the highway turns to the left, crosses a set of railroad tracks and then turns back to the right. At the beginning of the curve to the left the automobile went off the pavement on the left side, struck a utility pole breaking it off, and came to rest with its front end off the pavement and its rear end extending out onto the pavement. There is a dispute between the parties as to how far the rear of the

automobile actually extended out onto the pavement. The plaintiffs contend that it stuck out into the right lane of traffic while the defendants contend it did not.

Mabel Page left her automobile unattended and proceeded to the home of her married sister in order to secure help. It appears from the evidence that no lights were left burning on the vehicle to warn approaching motorists. This accident will hereinafter be referred to as the first accident.

Clara Lamb, one of the plaintiffs here, left her home in Willow Creek at approximately 9:30 p.m. on the night of January 8 and was proceeding to Three Forks where she worked the "graveyard" shift at one of the local restaurants. In going from Willow Creek to Three Forks she traveled the same route and on the same side of the highway Mabel Page was traveling before she left the highway.

Mrs. Lamb testified that at the bottom of a slight dip at the beginning of the "S" curve as it begins its turn to the left her lights revealed an Oldsmobile sedan crosswise on the highway, without lights and completely blocking one lane of traffic and partially blocking the lane she was in. She stated she made every possible effort to avoid a collision by carefully applying her brakes and by driving onto the right shoulder of the highway as far as possible. However, she collided with the parked vehicle and then guided her own vehicle off the highway onto an approach road which entered the highway from the right. This accident will hereinafter be referred to as the second accident.

The only eyewitness to testify at the trial relative to the positions of the cars prior to the second accident was Clara Lamb. For reasons not revealed by the record defendant Mabel Page did not appear and testify at the trial. In addition, Clara Lamb was also the only eyewitness to the actual second accident.

There is conflict in the record with regard to the position of the Page automobile before and after the second accident.

Clara Lamb testified that the Page automobile had been left in such a position that before she struck it the rear portion extended over the center line of the highway; it extended so far over the center line that she could not avoid it by driving on the shoulder of the highway. Other witnesses for the plaintiffs testified the Page vehicle extended over the center line of the highway *after* the second accident.

Witnesses for the defendants testified that the Page automobile, as left by Mabel Page when she went to seek help, rested with its transmission over the stub of the broken telephone pole; that both before and after the second accident the Oldsmobile sedan's transmission was resting on the broken stub of the utility pole and the car merely pivoted on the stub when hit by the Lamb vehicle.

Counsel for defendants attempted to show through the testimony of Dr. Roy Wiegand, a professor of physics, that it was impossible for the Page vehicle to extend to or beyond the center line of the highway either before or after the second accident, assuming the vehicle's transmission was resting on the broken stub. The trial court sustained plaintiffs' objection to the admission of such testimony.

It was stipulated by the parties in the pretrial order that all photographs of the accident location could be introduced without foundation proof. However, at the trial and in spite of the stipulation and order, counsel for defendants objected to the introduction of a photograph offered by the plaintiffs asserting the photograph was remote in time from the accident and showed conditions different from those at the time of the accidents. The objection was sustained.

Later defendants' counsel attempted to introduce photographs taken at some indefinite time after the accident. The court on plaintiffs' objection refused to admit them relying on plaintiffs' assertion that they did not truly represent the scene as of the time of the accidents, Clara Lamb having previously testified that conditions as portrayed in the photo-

graphs were not the same as those at the time of the accident. The court also noted there was no showing of who took the photographs and further that the stipulation in the pretrial order had "went over the board" because of defense counsel's first objection to introduction of photographs offered by the plaintiffs.

As specification of error #1, defendants contend the photographs should have been admitted since under Pilgeram v. Haas, 118 Mont. 431, 167 P.2d 339, photographs may be proved to be correct representations by witness other than the person who took them.

In Pilgeram v. Haas, supra, at p. 449, 167 P.2d at p. 348, this Court said:

"Where the nature or condition of a place becomes a matter of controversy in a civil action, photographs of the place shown to be true representations of it at the time in question are generally admissible in evidence. Photographs may be proved to be correct representations by witnesses other than the person who took them."

Here, the objection made was based on the fact that the photographs did not accurately portray conditions as they existed on the night of the accidents, not that the photographs were taken by someone other than the witness testifying.

This Court in Toole v. Paumie Parisian Dye House, 98 Mont. 191, 39 P.2d 965, noted that the time when photographs were taken must be satisfactorily proven. There was no attempt here to prove when the photographs were taken. In addition, In Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 439, 357 P.2d 4, we held:

"The trial court has wide discretion in admitting diagrams, maps and photographs that will assist the jury in understanding a case. * * *

" 'The general rule governing the admissibility of photographs is that they stand upon the same footing as a map or plat. * * * And "it is not even necessary that the situa-

tion or condition should be precisely the same, but it is sufficient if the situation is substantially unchanged, and even the fact that there have been changes in conditions, will not necessarily exclude a photograph where the changes can be and are explained, so that the photograph, as explained, will give a correct understanding of the condition existing at the time to which the controversy relates." 22 C.J. 920.' "

We hold that the court below was correct in denying admission. First, there was no offer of proof of the element of time, that is, when the photographs were taken. Second, there had been substantial changes and there was no attempt to give any explanation of the changes so as to give a correct understanding of the conditions as they existed at the time of the accidents. Two of the photographs depict a highway absolutely barren of any ice or moisture, taken during daylight hours and no snow on the ground as there was the night of the accidents. The other two photographs also show substantially changed conditions in that while they are attempts to show the location of the broken utility pole, one photograph depicts the hole left by the removal of the stub, the other taken from across the highway shows three-fourths of the width of the pavement and what appears to be the stub of the pole lying in the borrow pit next to the road.

Specification of error #2 is that the court erred in sustaining plaintiffs' objection to the testimony of Dr. Wiegand, defendants' expert witness. The use of Dr. Wiegand was an attempt by the defendants to show that if the Page vehicle's transmission was resting on the broken stub, then the rear of the vehicle could not possibly have extended beyond the center line of the highway either before or after the second accident.

In Eby v. Foremost Insurance Co., 141 Mont. 62, 374 P.2d 857, we quoted from Nutt v. Southern Pac. Ry., 25 Or. 291, 35 P. 653 as follows:

" 'The necessity for opinion evidence only exists where the facts in controversy are incapable of being detailed and de-

scribed so as to give the jury an intelligible understanding concerning them; but when the facts are such as can be detailed or described, and the jury are able to understand and draw a correct conclusion from them without such opinion evidence, the necessity for it does not exist.' See also Copenhaver v. Northern Pac. Ry., 42 Mont. 453, 113 P. 467, and In re Miller's Estate, 71 Mont. 330, 229 P. 851."

It was within the province of the jury to determine which witnesses they would believe—plaintiffs' who asserted the car was resting with its bumper against the broken stub and extending over the center line, or defendants' who asserted that the vehicle's transmission was resting on the broken stub making it impossible for the rear of the vehicle to extend over the center line. The pole in question was 13 feet, 6 inches from the center of the highway; the defendants' vehicle was 17 feet, 9 inches long and the transmission was 6 feet from the front bumper. The jury needed but to make a few mathematical calculations to determine whether the rear of the vehicle extended beyond the center line. Under those circumstances we find there was no need for expert testimony and the offered proof was properly excluded.

As specification of error #3 defendants contend the court should have directed a verdict for them on the question of their liability to plaintiffs and also on the question of the liability of Clara Lamb to defendants for damages to defendants' automobile. 2B Barron and Holtzoff, Federal Practice and Procedure, § 1075, p. 387 states the rule as follows:

"Thus, a verdict may be directed if there is no evidence or at most a mere scintilla on which to base a verdict for the party having the burden of proof. The question for the court is not whether there is literally no evidence, but whether there is any upon which the jury could properly proceed to find a verdict. A directed verdict is proper only where there is no controverted material issue of fact for the jury. If viewing the evidence in light most favorable to plaintiff, there

should be no substantial evidence to support a verdict for him, the defendant's motion should be granted.

"In viewing the evidence, the party against whom the motion is made must be given the benefit of every legitimate inference which can be drawn from the evidence; even if the facts are undisputed, the case must go to the jury if conflicting inferences may be drawn from the facts."

Also, as stated in Bailey v. Carver, 51 Wash.2d 416, 319 P.2d 821, an automobile accident case where the appellant contended the court should have directed a verdict, the Supreme Court of Washington said:

"No discretion is involved in ruling on a motion for a directed verdict. Such motion may be granted only where there is, as a matter of law, no evidence or reasonable inference therefrom to support the view of the party against whom the motion is made."

We fail to see, in light of the evidence introduced by plaintiffs, any merit in the defendants' contention that the court should have granted their motion for a directed verdict. Every issue was fully controverted and in our opinion the court below acted properly and did not err in submitting the case to the jury.

Defendants' specification of error #4 asserts that the court below should have given defendants' proposed instruction No. 5 relating to credibility of witnesses and the role of the jury in relation thereto. Such proposed instruction No. 5 reads as follows:

"YOU ARE INSTRUCTED That while it is the law that you are the exclusive judges of the credibility of the witnesses, this does not mean that you are at liberty to accept any statement made as the truth and thus base a verdict upon such testimony. The testimony must be credible—that is, believable. One of the rules for determining whether testimony is believable is to see whether a statement is inherently improbable— that is, improbable within itself. One may positively make a

certain statement or claim and yet the physical facts may be such as make it certain the statement or claim cannot be true. If such a situation is disclosed by evidence, the claim or statement is not entitled to credit.

"Another rule is that if the manner in which a witness testifies is such and the statements of a witness upon the stand vary so that there is produced in your minds a conviction that the testimony of the witness as to such statements is not and cannot be true, you are entitled to disregard such statements of any such witness. A witness may as well be contradicted by what he says as by the testimony of other persons."

After viewing offered instruction No. 5 and comparing it with the court's instruction No. 1, we feel all that is pertinent in offered No. 5 is adequately covered in the court's No. 1. The court's No. 1 is the same as that set forth in the Montana Jury Instruction Guide (MJIG) No. 1.00. We think this was adequate instruction on credibility of witnesses and that offered instruction No. 5 was repetitious and properly refused.

The court resorted to MJIG, instruction No. 15.00 in its instructions on proximate cause. Defendants' specification of error #5 asserts that the instruction on proximate cause should have been broader. Court's instruction No. 8 reads:

"The proximate cause of an injury is that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury, and without which it would not have occurred."

We feel that under the case of McNair v. Berger, 92 Mont. 441, 15 P.2d 834, the instruction was sufficent and there was no error in the court's refusing defendants' offered instruction No. 11.

Defendants' specification of error #6 contends that the court erred in refusing to give their proposed instruction No. 17. That proposed instruction dealt with the duty of a driver of a motor vehicle to drive on the right side of the highway. Plaintiffs objected to its offer on the ground that it was

an incorrect statement of the law under all of the facts that might or might not be present. As we view the proposed instruction we do not feel it is an entirely correct statement of the law; it placed upon the plaintiff, Clara Lamb, a duty to drive on the right side of the highway at all times and under all conditions. If she failed to do so the instruction made her absolutely negligent as a matter of law. It is clear that in Montana there are exceptions to the rule that one must travel upon the right side of the highway, e.g., sections 32-2151, 32-2153, R.C.M.1947. See also Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40, 33 P.2d 553.

The evidence and testimony relative to where Clara Lamb was driving at the time of the accident, whether on the right or left side, was in dispute. Further, no additional offer was made when the proposed instruction was refused. In those circumstances there was no error.

Defendants' specification of error #7 urges that the trial court erred in refusing to instruct on the doctrine of last clear chance. The instruction as offered is essentially 2 Restatement of Torts 2d, § 479. which statement has been recognized in Montana as part of the doctrine of last clear chance. In Mally v. Asanovich, 149 Mont. 99, 423 P.2d 294, we said at p. 104, 423 P.2d at p. 296:

"Commencing early in the century with the case of Neary v. Northern Pac. R. Co., 37 Mont. 461, 97 P. 944, 19 L.R.A.,N.S., 446 (1908), to the more recent cases of Sorrels v. Ryan, 129 Mont. 29, 281 P.2d 1028, and Gustafson v. Northern Pac. Ry. Co., 137 Mont. 154, 351 P. 2d 212, this court has recognized and developed the doctrine of last clear chance in Montana. Generally the cases under this doctrine fall into two classifications; (1) the helpless plaintiff, and (2) the inattentive plaintiff. These two situations are ably set forth and discussed in 2 Restatement of Torts 2d, §§ 479 and 480."

Recently, in Hannigan v. Northern Pacific Ry. Co.,

142 Mont. 335, 345, 384 P.2d 493, in connection with the doctrine of last clear chance this Court said:

"In Pollard v. Oregon Short Line R. R. Co., 92 Mont. 119, 11 P.2d 271, this court said that 'in order to state a cause of action under the last clear chance doctrine, the pleader must disclose (1) the exposed condition brought about by the negligence of the plaintiff, or the injured party; (2) the actual discovery by the defendant of the perilous situation of the person or property in time to avert collision; and (3) the failure thereafter of the defendant to use ordinary care to avert the injury.' "

Although that case involved a collision between an automobile and a train, we think that what we said there is applicable here.

In our opinion the defendants completely failed to disclose any of the three elements set forth in the above case. The offered instruction of last clear chance was completely inapplicable; it is not error to refuse an inapplicable instruction. Townsend v. City of Butte, 41 Mont. 410, 109 P. 969; Malano v. Bressan, 76 Mont. 366, 245 P. 871.

With regard to all specifications of error relative to the court's refusal to give defendants' proposed instructions, we find the court below fully and fairly instructed the jury. It almost goes without saying that where the court has fully and fairly instructed the jury it is not error to refuse requested instructions covered by those actually given. See Holmes v. Potts, 132 Mont. 477, 319 P.2d 232; Franck v. Hudson, 140 Mont. 480, 373 P.2d 951; Wollan v. Lord, 142 Mont. 498, 385 P.2d 102; State Highway Comm. v. Manry, 143 Mont. 382, 390 P.2d 97.

Inspecifications of error #'s 8 and 9 the defendants urge that the court erred in entering judgment in favor of plaintiffs on the verdict returned by the jury and also erred in denying defendants' motion for judgment notwithstanding the verdict.

In view of our preceding discussion these contentions are wholly without merit.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, JOHN C. HARRISON and CASTLES, concur.