No. 12435

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

_____

JOHN A. ELLIOTT,

Plaintiff and Appellant,

-vs-

RASMUS M. HANSEN,

Defendant and Respondent.

_____

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Morrow, Nash and Sedivy, Bozeman, Montana
Edmund P. Sedivy, Jr. argued, Bozeman, Montana

For Respondent:

Berg, Angel, Andriolo and Morgan, Bozeman, Montana
Richard Andriolo argued, Bozeman, Montana

_____

Submitted: December 4, 1973

Decided: FEB 2 8 1974

Filed: FEB 2 8 1974

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an action for damages suffered in an automobile collision. The action was tried in the district court of the eighteenth judicial district, Gallatin County. Plaintiff, John A. Elliott appeals from the final judgment of the district court entered on a jury verdict in favor of defendant Rasmus M. Hansen.

At approximately 8:30 a.m. on June 11, 1970, automobiles driven by the litigants herein collided near Bozeman, Montana, at the intersection of U.S. Highway 191 and State Highway 291, known locally as the "Four Corners". The Four Corners intersection was controlled by a stop sign at each of its four entrances; a flashing red light was suspended over the center of the intersection; and on the roads approaching from the south and from the east (the roads upon which Hansen and Elliott, respectively, were traveling) flashing yellow lights were positioned about 1,000 feet ahead of the "four way" stop signs. Weather conditions were clear on that morning and visibility was good. The terrain and surroundings at the Four Corners were such that from the stop sign at either the south or east entrance there was an unrestricted view of other approaching cars practically as far as the eye could see.

Elliott testified that prior to the accident he approached the intersection headed west, made a complete stop at the stop sign, looked in all directions and, seeing no cars coming or stopped at the other stop signs, entered the intersection and began making a left turn. Quoting from Elliott's testimony:

"Q. Was anybody stopped at any of the other four stop signs? A. No.

"Q. Well, then what did you do? A. I proceeded into the intersection, and then turned left to go south to West Yellowstone.

"Q. At anytime after you had left the stop sign, did you ever observe Mr. Hansen's vehicle? A. No. not until I started to turn left and looked south down the road.

"Q. What did you see? A. I saw this car coming at me.

"Q. This car was coming from south to north; is that correct? A. That is correct."

Hansen testified that prior to the accident he approached the intersection headed north, made a complete stop at the stop sign, looked in all directions and, seeing no cars approaching or stopped at the other stop signs, entered the intersection intending to proceed straight through and continue north. Quoting from Hansen's testimony:

"Q. Were there any cars in the intersection when you started up? A. No, not when I started; nope.

"Q. Then what occurred as you entered the intersection and were moving through the intersection? A. Well, I just got started and then I seen this car coming. And I swerved to the right and tried to avoid hitting him straight on.

"Q. Now, when you saw this car, did you have much time? A. I didn't have probably one or two seconds.

"Q. In other words, it was almost instantaneous? A. That's right.

"Q. What did you do as soon as you saw it? A. I kind of braced myself. I suppose I must have stepped down on the accelerator a little more and I swerved to the right as quick as I could.

"Q. What was the purpose of bracing yourself? A.Well, it is just a habit, I guess; I don't know. You knew there was going to be a collision of some kind."

Elliott estimated his speed at the time of the collision at ten to fifteen miles per hour. Hansen in answer to a pretrial interrogatory stated that his speed was five to ten miles per hour at the time of the collision. However, Hansen testified at trial that he had not looked at his speedometer immediately prior to the collision and did not actually know his speed at that time. He testified that subsequent to answering the interrogatory and prior to trial, he had made practice runs at the Four Corners intersection in a similar car, and based on those experiments he revised his estimate of his speed at the time of impact to twenty to twenty-five miles per hour. Hansen also testified the collision impact knocked him to the floor of his car and may have caused him to continue holding the accelerator down after the collision.

Montana Highway Patrolman Austin Carey, who investigated the accident, testified the cars impacted in the north-east quadrant of the intersection near the center. The Elliott car was struck nearly broadside on the left side by the left front end of the Hansen car. The left side of the Elliott car was demolished and the car was spun around nearly 80 degrees, coming to rest near the center of the intersection. The left front end of the Hansen car was severely damaged, the fender and bumper being bent until they impinged on the left front tire. The only skid mark at the scene of the accident was left by the left front tire of the Hansen car, which travelled on about forty-nine feet to the northeast corner of the intersection, crashed through and came to rest atop a cement and steel guard rail.

Both Hansen and his wife, who was the only passenger, were shaken but not seriously injured. Elliott, alone in his car, sustained a severe injury to his left hip which required surgical replacement of the hip joint.

The case was tried to a jury, and judgment was entered on a verdict in favor of defendant Hansen. From that judgment and from the trial court's denial of motions for a judgment notwithstanding the verdict and for a new trial, plaintiff Elliott brings this appeal, assigning these issues:

(1) Did the trial court err in giving instruction No. 7 on contributory negligence?

(2) Did the trial court err in giving instruction No. 9 on continuing and concurring negligence?

(3) Did the trial court err in refusing plaintiff's offered instruction 6 concerning Elliott's right to assume Hansen would use reasonable care?

(4) Did the trial court err in refusing to grant plaintiff's motions for a new trial, and judgment notwithstanding the verdict?

Concerning the first appeal issue, plaintiff relies heavily on DeVerniero v. Eby, 159 Mont. 146, 148, 496 P.2d 290, in con-

tending that a contributory negligence instruction was improper under the facts of the instant case. An important factual distinction exists between the cases. In DeVerniero:

"The intersecting streets were of equal status and were not marked with stop signs, stop lights or warning approach signals. * * *

"It is uncontested that in such a situation as existed here---where two vehicles are entering or approaching an intersection from different highways at approximately the same time, that under Montana statute section 32-2170, R.C.M. 1947, and sections 21-145, and 21-170, Billings Traffic Code, the driver of the vehicle to the left is required to yield the right of way to the vehicle on the right."

Here, the intersection involved was controlled by "four way" stop signs and the procedure of approach and entry into the intersection was never definitely established.

Section 32-2170, R.C.M. 1947, provides:

"Vehicle approaching or entering intersection. (a) When two (2) vehicles enter or approach an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.

"(b) The right of way rule declared in paragraph (a) is modified at through highways and otherwise as here-inafter stated in this article."

Section 32-2172(b), R.C.M. 1947, provides:

"(b) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one (1) or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but then may proceed."

Section 32-2166, R.C.M. provides:

"No person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety."

The general right of way rules stated in section 32-2170, R.C.M. 1947, are modified by section 32-2172, R.C.M. 1947, so that the vehicle approaching from the right that would otherwise have the right of way loses the preference because it is required to stop. There being no preferential right of way afforded a driver when required to stop by section 32-2172, then a driver approaching a four way stop has a statutory duty to stop, followed

by a statutory duty to exercise ordinary care as he proceeds into or through the intersection. Sections 32-2166 and 32-2195(d), R.C.M. 1947; Allstate Ins. Co. v. Angelo, 7 Ohio App.2d 149, 219 N.E.2d 218.

Certainly, then, a factual issue existed at trial. Both Elliott and Hansen had the duty to make a full stop before entering the intersection and to exercise ordinary care to determine that it was reasonable safe to proceed into the intersection. Sullivan v. Northern Pac. Ry. Co., 109 Mont. 93, 94 P.2d 651. Under the facts here, neither Elliott nor Hansen had a statutory right of way or "preferred" or "favored" driver status.

Elliott also contends that Hansen's act in accelerating his vehicle rather than applying his brakes immediately prior to the collision amounts to an unforeseeable intervening or superseding cause which would break the chain of proximate causation as to any negligence committed by Elliott. This contention has merit, and the record reflects that the trial court granted instructions on the concept of "proximate cause" and "last clear chance". However, we find the evidence before the jury was by no means so overwhelming that reasonable minds could not draw different conclusions as to whether the acceleration only instantaneously preceded the already inevitable collision or whether it was the effective cause of the collision.

We hold the jury was properly instructed on the issue of contributory negligence.

Concerning the second appeal issue, defendant's proposed instruction 19, given as court's instruction No. 9, reads:

> "You are instructed that the plaintiff is not entitled to recover from the defendant under the doctrine of last clear chance as previously defined to you in these instructions if you find that the plaintiff was negligent and that plaintiff's continued negligence up to the time of the accident and concurred as a proximate cause thereof."

Defendant's brief discloses that the legal authority relied on in framing this instruction was Gustafson v. Northern Pac. Ry. Co., 137 Mont. 154, 160, 351 P.2d 212, where this Court stated:

"Defendant cites Pollard v. Oregon Short Line R. Co., 92 Mont. 119, 11 P.2d 271, and Mihelich v. Butte Electric Ry., 85 Mont. 604, 281 P. 540, as authority for the contention that contributory negligence is a defense in a last clear chance case. But these cases are not properly so construed. They do point out that should a plaintiff continue to be negligent up to the time of the accident, so that such negligence is a concurring proximate cause of his own injury then the theory of the last clear chance has no application. * * *

"From what has been said, it is apparent that what is commonly understood as 'contributory negligence' is no defense in a last clear chance case, since this theory concedes plaintiff was negligent in putting himself into the position of peril at the outset. However, a defendant may defeat plaintiff's claim by proving that plaintiff was negligent up to the time of the injury and that his negligence was a concurring proximate cause."

The trial court's instruction No. 9 was a correct statement of the law. Hannigan v. Northern Pacific Ry. Co., 142 Mont. 335, 384 P.2d 493; Prosser Torts 4th Ed. § 66, p. 431. The fact of Elliott's continuing and concurring negligence was fairly at issue upon the evidence before the jury, as it appears possible that Elliott failed to observe the Hansen vehicle or apply his brakes practically until the collision occurred.

In light of the fact that Elliott introduced the "last clear chance" issue in his proposed instruction 23 (given as court's instruction No. 8), we find that court's instruction No. 9 was a fair and correct statement of the law and appropriate under the evidence.

The third appeal issue concerns plaintiff's proposed instruction 6 refused by the trial court. The instruction was taken from Jessen v. O'Daniel, 136 Mont. 513, 349 P.2d 107, and states the general principle that a person who is exercising ordinary care has a right to assume that others will do likewise. The instruction as worded was a correct statement of a legal principle and would not have constituted error had the trial court elected to permit it. However, in light of the factual dispute as to whether either of the litigants was exercising ordinary are, the applicability of this instruction was questionable at best.

Reviewing the thirty instructions actually given by the trial court, we find that the issues of legal duty, negligence, proximate cause and damages were well defined and explained, hence the trial court was within the legitimate exercise of its sound discretion in refusing plaintiff's proposed instruction 6. Bjorndal v. Lane, 157 Mont. 543, 487 P.2d 527; Lamb v. Page, 153 Mont. 171, 455 P.2d 337.

Plaintiff's fourth issue concerns the trial court's denial of plaintiff's motions for judgment notwithstanding the verdict and for a new trial. We find this case was well tried; the jury was fully and fairly instructed. The evidence, although conflicting, was sufficient if viewed in the light most favorable to the prevailing party in the district court to sustain the jury's verdict. Gunderson v. Brewster, 154 Mont. 405, 466 P.2d 589; Jessen v. O'Daniel, 136 Mont. 513, 349 P.2d 107.

The judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.

. . . . . . . . . . . . . . . . . . . . . . . .

Mr. Justice John Conway Harrison dissenting:

I dissent.

_____
Justice.

- 8 -