DA 10-0159



FILED

April 19 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 78

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　　v.

STEVEN JOSEPH WILMER,

　　　　Defendant and Appellant.

APPEAL FROM:　District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DC 09-18
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　Ethan C. Lerman; Lerman Law Firm, PLLC; Missoula, Montana

　　　　For Appellee:

　　　　Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

　　　　M. Shaun Donovan, Mineral County Attorney; Superior, Montana

Submitted on Briefs:　March 2, 2011

Decided:　April 19, 2011

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Steven Joseph Wilmer (Wilmer) appeals his conviction of Waste of a Game Animal. He raises the following issues:

¶2 *1. Whether photographs of the deer carcass properly were admitted despite being taken several days after the carcass was seized from Wilmer's property.*

¶3 *2. Whether the District Court properly admitted expert testimony regarding the condition of the meat.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On January 27, 2009, Warden Michael Fegley (Fegley) received an anonymous tip from 1-800-TIP-MONT indicating Wilmer had a deer hanging on the side of his trailer since Thanksgiving. Fegley visited Wilmer's residence on January 28, 2009. Fegley observed a deer carcass that was dried out with frozen water in the chest cavity and mold growing on the interior and exterior. The carcass was hanging on Wilmer's deck exposed to the elements. Based on Fegley's observations about the general appearance and texture of the carcass, he determined the meat was not fit for human consumption. After seeing the carcass and inquiring about the location of the animal tag, Fegley warned Wilmer that it was illegal to waste game, to kill an animal without a tag, and to fail to keep the tag attached to the animal at all times.

¶5 Fegley returned to Wilmer's residence on January 31, 2009. At that time, Wilmer presented Fegley with a deer tag marked for two different days, November 11, 2008 and November 19, 2008. When Fegley asked Wilmer what exact day the deer was shot, Wilmer responded that he didn't remember. Fegley explained to Wilmer that the standard for a violation of the law prohibiting waste of a game animal is whether the meat

2

is fit for human consumption. According to Fegley, Wilmer's only response was "it's my deer, I can do with it what I want."

¶6 Fegley wrote Wilmer two tickets, Waste of a Game Animal and Failure to Tag the Carcass of a Game Animal. Fegley confiscated the carcass and put it in the back of his truck. For three days, the carcass remained uncovered in the bed of Fegley's truck. On February 3, 2009, Fegley photographed the carcass and disposed of it.

¶7 Wilmer was tried before a jury in the Mineral County Justice Court and convicted of both charges. Wilmer appealed to the District Court.

¶8 Prior to trial, Wilmer filed a motion in limine to exclude, among other things, the photographs Fegley took of the carcass and the testimony of Jerry Stroot (Stroot). Stroot is the owner and operator of Superior Meats. He has worked in meat processing for approximately thirty years and is certified by the United States Department of Agriculture in Hazardous Analysis of Critical Control Points in food processing. He also regularly attends Montana Meat Processors Association training. Stroot regularly inspects wild game to determine whether the meat is fit for human consumption. While Stroot had not personally inspected the deer carcass that Fegley seized from Wilmer's property, he had examined the photographs and was offered by the State to present expert testimony regarding the condition of the meat.

¶9 The District Court denied Wilmer's motion in limine and held a jury trial on December 30, 2009. Fegley, Wilmer, and Stroot all testified at trial. The photographs of the carcass were admitted over objection after Fegley testified that the carcass was in the

3

same condition at the time of disposal as the day he confiscated it from Wilmer's property.

¶10 The jury found Wilmer guilty of both charges and the court sentenced him to twelve months in the county jail, all suspended, imposed the maximum fine, and suspended of all of his hunting, fishing, and trapping privileges for twelve months. Wilmer now appeals.

## STANDARD OF REVIEW

¶11 Rulings regarding the admissibility of evidence are left to the sound discretion of the trial court and will not be overturned absent a showing of manifest abuse of discretion. *State v. Bar-Jonah*, 2004 MT 344, ¶ 96, 324 Mont. 278, 102 P.3d 1229. A district court's weighing of potential prejudice against probative value will be upheld absent an abuse of discretion. *Id.*

## DISCUSSION

¶12 *1. Whether photographs of the deer carcass were properly admitted under M. R. Evid. 403.*

¶13 Wilmer contends the photographs of the deer carcass are not probative and therefore should not have been admitted under M. R. Evid. 403. He argues that because the carcass was photographed three days after it was confiscated, the photographs are not instructive as to the condition of the carcass while in Wilmer's possession. He also alleges that, even if admissible, the State failed to provide a proper foundation for the photographs at trial.

4

¶14 Evidence is probative if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. Evidence is relevant and admissible "if the state is able to demonstrate a link between the evidence and the fact or element in question." *Bar-Jonah*, ¶ 99.

¶15 Section 87-3-102(3), MCA, states:

(3) A person responsible for the death of any game animal . . . commits the offense of waste of game if the person purposely or knowingly:

. . .

(b) wastes any part of any game animal . . . by transporting, hanging, or storing the carcass in a manner that renders it unfit for human consumption . . . .

¶16 The photographs of the carcass were presented as evidence of its condition. They were therefore clearly instructive as to the quality of the meat and whether Wilmer allowed the game to be wasted. Fegley testified to photographing the carcass three days after confiscating it. He also testified that the storage conditions, including exposure to the elements, were the same as they had been at Wilmer's residence, where the carcass admittedly had been hanging for roughly seventy days. Fegley insisted that the condition of the carcass when photographed was the same as when it was confiscated.

¶17 Wilmer argues that there were animal bite marks on the carcass and that Fegley could not be certain those marks did not occur while in the back of Fegley's truck. This Court has upheld a district court's refusal to admit photographs when taken at an unknown time and where conditions had substantially changed. *See Lamb v. Page*, 153 Mont. 171, 177, 455 P.2d 337, 340 (1969). However, it is not necessary for the State to

5

prove with affirmative testimony that evidence could not have been tampered with. *State v. Walton*, 222 Mont. 340, 343, 722 P.2d 1145, 1147 (1986) (citing *State v. Wong Fong*, 75 Mont. 81, 87, 241 P. 1072, 1074 (1925)). It is only necessary to identify the evidence and make a prima facie showing that there had been no substantial change in it to warrant its introduction into evidence. *Id.* Because the deer was hanging at Wilmer's property for approximately ten weeks prior to Fegley's seizure of it, an additional three days under the same conditions would not have substantially altered the quality of the meat. Any change the carcass may have undergone in the three days between confiscation and disposal affected the weight of the evidence rather than its admissibility.

¶18 Finally, Wilmer fails to demonstrate why the photographs were unfairly prejudicial, requiring exclusion under M. R. Evid. 403. To convict Wilmer of Waste of a Game Animal, the State was required to prove the meat was not fit for human consumption. Section 87-3-102(3), MCA. Wilmer offers no support for his argument that the photographs contained anything prejudicial, except for the very reason they possessed probative value—they showed the condition of the carcass. Wilmer claims unfair prejudice because the photographs omitted any sense of smell, which he argues was critical for the jury to determine fitness for consumption. Again, however, that was a matter of weight rather than admissibility.

¶19 Because the photographs offered a visual representation of the condition of the carcass, substantially unchanged from the time of seizure, they were probative of an element of the offense. Their probative value was not substantially outweighed by the danger of any unfair prejudice that might arise from the jury's inability to smell the

6

carcass depicted in the photographs. The District Court did not abuse its discretion in admitting the photographs.

¶20 **2. Whether Stroot's testimony was properly admitted under M. R. Evid. 602 and 703.**

¶21 Wilmer contends the District Court should have excluded Stroot's testimony because it was based solely on his observation of the photographs admitted at trial and because the jury reasonably could have determined whether the meat was fit for human consumption without expert testimony. Under M. R. Evid. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." The "facts or data in a particular case upon which an expert bases an opinion may be those perceived by or made known to the expert at or before the hearing." M. R. Evid. 703. Although Rule 602 requires lay witnesses to have personal knowledge of a matter in order to testify, personal knowledge is not required for expert testimony. M. R. Evid. 602 ("[This rule] is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses").

¶22 Wilmer first argues that because Stroot's observations were based only on the photographs taken by Fegley, his testimony was improperly admitted. Stroot testified that the condition of meat may be determined by visual inspection and smell. Wilmer contends that without direct inspection of the carcass, Stroot could not accurately have determined whether the meat was fit for human consumption. However, Stroot testified

7

that a visual inspection revealing mold or manure on the meat would be sufficient to determine that meat is not fit for human consumption. After reviewing the photographs, Stroot identified mold on the carcass and was confident it was not fit for human consumption. Therefore, Stroot's testimony was helpful to the jury in reaching a conclusion on whether the meat had been wasted. In weighing Stroot's testimony, the jury properly could consider that his opinion was based only on his observation of the photographs.

¶23    Second, Wilmer argues that expert testimony should not have been admitted because many Montana jurors hunt their own game and therefore understand whether meat is fit for human consumption. A district court properly may exclude expert testimony where the issue of fact is not beyond the ordinary understanding of the jury and sufficient evidence already has been presented for the jury to consider. *Ployhar v. Board of Trustees*, 187 Mont. 363, 365, 609 P.2d 1226, 1228 (1980).

¶24    While the experience of hunting and butchering an animal, even buying meat at the grocery store, might inform the average juror of the characteristics of meat fit for human consumption, it is not clear the jury should have been left to rely on the testimony of Fegley, Wilmer, and the photographs in making its determination. Fegley testified that the appearance of the meat, its texture, smell, weight, and the fact that the carcass had been hanging for approximately ten weeks were all factors that he considered in determining whether the meat was fit for human consumption. But Fegley acknowledged the carcass did not smell bad. Wilmer's testimony, on the other hand, indicated he was still eating the meat.

8

¶25    Stroot explained that visual appearance as well as the smell of the meat are factors he generally considers.  Stroot testified that his experience as a meat inspector enables him, in certain circumstances, to determine by visual examination alone whether meat is fit for human consumption.  Stroot was able to determine, based solely on the photographs, that the meat was not fit for human consumption.  Because the condition of the carcass was an essential element of the offense, the District Court reasonably concluded that determining the quality of meat was beyond the ordinary understanding of the jury and did not abuse its broad discretion in admitting Stroot's testimony.

¶26    We affirm the judgment of the District Court.


                                        /S/ BETH BAKER


We concur:


/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE