DA 19-0326

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 121

FILED

05/18/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0326

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LAWRENCE MATTHEW BRASDA,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC 17-402
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Michael Marchesini, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

          Joshua Racki, Cascade County Attorney, Amanda Lofink, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs: April 14, 2021

Decided: May 18, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Lawrence Matthew Brasda appeals from his conviction after jury trial of felony possession of dangerous drug (methamphetamine), arguing the District Court abused its discretion by excluding evidence during the trial.

¶2 We affirm, and restate the issue as follows:

*Did the District Court err by prohibiting Brasda's examination of the State's crime lab witness about the involvement of a discharged crime lab employee with the drug evidence?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 In the early morning hours of July 6, 2017, Great Falls police officers responded to a traffic complaint of someone "driving a pick-up recklessly around the neighborhood, doing burn outs, and driving up and down the street." After locating Lawrence Brasda's vehicle, officers contacted Brasda outside his residence. Officer Kristi Walker searched Brasda, discovering a used glass pipe and baggie containing a hard crystalized substance. Officer Jacob Smith conducted a field test on the substance, which indicated the presence of methamphetamine. Smith secured the evidence taken from Brasda in the trunk of his police cruiser and transported Brasda to a detention center. Smith sealed the evidence and placed it in a temporary locker. Anne Duncan, an Evidence Technician for the Great Falls Police Department, later removed the evidence from the temporary locker, logged the items in the police department's database, labeled the evidence with identifying information, and placed it in permanent storage. Brasda was charged with one count of criminal possession

of dangerous drugs in violation of § 45-9-102, MCA, and one count of criminal possession of drug paraphernalia, in violation of § 45-10-103, MCA.

¶4 On July 27, 2017, Duncan submitted the baggie and its contents for testing to the Forensic Science Division of the Montana Department of Justice (State Crime Lab) in Missoula, Montana. Upon the return of the evidence from the State Crime Lab on October 5, 2017, Kelli French, an Evidence Technician for the Great Falls Police Department, checked in and stored the sealed, tested evidence.

¶5 In November 2017, the Cascade County Attorney filed a notice of intent to call Derek Thrush of the State Crime Lab to testify as an expert witness "regarding the testing and results of the chemical analysis of the evidence recovered by law enforcement in this matter." In March 2018, Brasda entered a plea agreement, agreeing to plead guilty to possession of dangerous drugs. However, at the change of plea hearing on April 10, 2018, Brasda's counsel instead moved for a continuance, explaining that "evidentiary issues require potential briefing and/or sample testing," specifically, that "information involving Mr. Thrush at the crime lab was learned, and he's the individual who tested the alleged contraband in this case."[1] The State did not object, and the District Court granted a six-week continuance. On May 4, 2018, the District Court vacated the change of plea hearing and scheduled trial on Brasda's charges for August 13, 2018.

---

[1] In February 2018, Thrush admitted to investigators "that he had used methamphetamine a number of times over the previous months, and that he obtained the methamphetamine from the Montana Crime Lab where he was employed." The Missoula County Attorney eventually charged Thrush with multiple counts of criminal possession of dangerous drugs, theft, and official misconduct.

3

¶6	At the request of the County Attorney, on May 8, 2018, Sheila Byrd, an Evidence Technician for the Great Falls Police Department, resubmitted the sealed evidence to the State Crime Lab for additional testing. Travis Doria, a Forensic Chemist for the State Crime Lab, received the sealed evidence for testing. Doria first conducted a presumptive test on the material, followed by a chemical analysis with a gas chromatograph-mass spectrometer. Both tests confirmed the presence of methamphetamine. Doria re-sealed the evidence and generated a report and case file, which was then reviewed by two other analysts "for technical and administrative errors." Following this process, the State Crime Lab transferred the sealed evidence back to the Great Falls Police Department.

¶7	In June 2018, the County Attorney filed notice of withdrawal of Thrush as an expert witness, and of substitution of Doria as an expert witness to testify "regarding the testing and results of the chemical analysis of the evidence recovered by law enforcement in this matter." In August 2018, the County Attorney filed a memorandum of law "regarding chain of custody and motion in limine," arguing Brasda must affirmatively show any evidence tampering and requesting the District Court prohibit Brasda from offering evidence "regarding the testing by Derek Thrush and the facts surrounding his being under investigation." Brasda objected to the motion.

¶8	On the morning of trial, prior to voir dire, the District Court held a hearing regarding evidence of Thrush's involvement. The District Court ruled Thrush's involvement was relevant and probative, "assuming it can be proven with a reliable witness who has personal knowledge." Regarding chain of custody, the District Court limited statements about

4

Thrush during voir dire and opening statements to permit the issue to be addressed during Doria's testimony.

¶9 Following testimony from Officer Walker, Officer Smith, Duncan, and Byrd, the prosecution called Doria to testify as an expert that the evidence had been tested and contained methamphetamine. The District Court dismissed the jury to address the reserved evidentiary issues. Following questioning of Doria by both parties and the District Court, the court stated it was

> satisfied that [Doria] does not have the necessary personal knowledge to explain why Mr. Thrush isn't there anymore. If you're going to put that in, you're going to need to have somebody other than him, because he does not have personal knowledge. He knows what he knows about this because somebody told him. That's hearsay, and it's inadmissible.

Emily Wemlinger, a Quality Manager of the State Crime Lab, was then called to testify outside the presence of the jury. Wemlinger testified she had learned from secondhand information that Thrush was under investigation for stealing methamphetamine from the State Crime Lab. Based on that report, Wemlinger undertook review of Thrush's previous work, ultimately ordering that original samples in about 10% of Thrush's work product be re-tested for accuracy, which occurred in this case. Both parties and the District Court questioned Wemlinger, after which the District Court furthered its ruling:

> So my understanding of [*State v. McCoy*, 2012 MT 293, 367 Mont. 357, 291 P.3d 568] and [*State v. Weeks*, 270 Mont. 63, 891 P.2d 477 (1995)] is that we don't know whether the sample has been tampered with, because the Defense can't prove it. The chain of custody is sufficient, and the evidence is admissible. And those cases say that speculation and 'what if' isn't - - about what might have happened to the sample isn't enough, that defense has got to have solid proof that somebody actually did tamper with the sample. You have proven that he could have tampered with it. You haven't proven

5

he did on a more likely basis or otherwise. So I'm maintaining my previous ruling. Those two samples are admissible as is the testimony about them.

¶10 The trial concluded the next day, with the jury finding Brasda guilty on both the felony and misdemeanor counts. Brasda appeals.

## STANDARD OF REVIEW

¶11 Trial courts have "broad discretion on evidentiary matters, and '[t]he determination of the adequacy of the foundation for the admission of evidence is within the discretion of the trial court, and will not be overturned absent a clear abuse of discretion.'" *McCoy*, ¶ 11 (citing *Weeks*, 270 Mont. at 75, 891 P.2d at 484); M. R. Evid. 104(a). A court abuses its discretion when it acts "arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice." *State v. Quinlan*, 2021 MT 15, ¶ 16, 403 Mont. 91, 479 P.3d 982 (citing *State v. Pelletier*, 2020 MT 249, ¶ 12, 401 Mont. 454, 473 P.3d 991). Rulings are in error when a "substantial right of the party is affected." M. R. Evid. 103(a).

## DISCUSSION

¶12 *Did the District Court err by prohibiting Brasda's examination of the State's crime lab witness about the involvement of a discharged crime lab employee with the drug evidence?*

¶13 Brasda argues the District Court erred by "prohibiting Mr. Brasda from cross-examining Travis Doria about Derek Thrush's prior testing and the need for retesting." Brasda first argues it was unnecessary for Doria to have personal knowledge of Thrush's circumstances, because Doria could provide otherwise inadmissible hearsay because of "his expert witness status."

6

¶14 The Montana Rules of Evidence require different foundations for admission of lay and expert witness testimony. Lay witnesses are prohibited from testifying "to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." M. R. Evid. 602. If a witness has personal knowledge, the witness may provide "opinions and inferences . . . rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." M. R. Evid. 701. Absent inadmissible hearsay, Doria lacked personal knowledge to testify about Thrush's drug use, investigation and termination, and its subsequent effect on the necessity to re-validate evidence, and therefore could not testify as a lay witness.

¶15 In contrast, "personal knowledge is not required for expert testimony." *State v. Wilmer*, 2011 MT 78, ¶ 21, 360 Mont. 101, 252 P.3d 178 (citing M. R. Evid. 602). An expert witness may testify "in the form of an opinion or otherwise," to "scientific, technical, or other specialized knowledge" that assists the "trier of fact to understand the evidence or to determine a fact in issue," so long as the witness is qualified as "an expert by knowledge, skill, experience, training, or education." M. R. Evid. 702.

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

M. R. Evid. 703. "Rule 703 thus contemplates that a testifying expert may refer to otherwise inadmissible hearsay upon a foundational showing that the expert relied on the

otherwise inadmissible evidence in forming the expert's opinion and the information is of a type reasonably relied upon by experts in the field of expertise." *In re C.K.*, 2017 MT 69, ¶ 18, 387 Mont. 127, 391 P.3d 735 (collecting cases).

¶16 Here, Doria could not rely on Thrush's circumstances to provide an expert opinion on the testing and analyzing of controlled substances. As a forensic chemist employed by the State Crime Lab, Doria's "responsibilities includ[ed] the analysis of suspected controlled substances and clandestine laboratories," for which his educational and professional background provided a foundation for expert testimony on the subject. Rule 703 permits an expert witness to rely on otherwise inadmissible evidence "[i]f of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject." Thrush's drug use and termination was not evidence a chemist would reasonably rely on in reaching an expert opinion on chemical analysis of the material at issue. As differentiated by Doria in his testimony, he does not analyze concerns regarding the chain of custody: "[i]f there was an issue with the chain of custody, it would be addressed before analysis or whenever the issue was found. Without a proper chain of custody, there isn't a point of us working the evidence in the first place." Because Doria testified only as an expert witness "regarding the testing and results of the chemical analysis of the evidence," his ultimate opinion required no reliance on Thrush. Thus, Doria's personal knowledge about Thrush, or lack thereof, was not a factor within his expert analysis and testimony, and was not admissible for that purpose.

¶17 Second, Brasda argues "Doria's knowledge about Thrush's misdeeds was not hearsay because it would have been admitted to explain why he retested the sample." Brasda contends he wanted Doria "to explain why [he] had to retest the sample after the Crime Lab had already tested it once," not to prove that Thrush was a "drug user and thief," and that "the out-of-court statements about Thrush's misdeeds were admissible to explain why Doria took the action of retesting the sample."

¶18 We agree with Brasda that such an inquiry would have been permissible under the Rules of Evidence. "[O]ut-of-court statement[s] offered to prove something other than the truth of the matter asserted is not hearsay and is, accordingly, generally admissible." *State v. Laird*, 2019 MT 198, ¶ 73, 397 Mont. 29, 447 P.3d 416; *see also* M. R. Evid. 801(c) (defining hearsay). Brasda offers a non-hearsay purpose for admission of the testimony on Thrush's involvement, that being the reason the evidence was retested by Doria, not for the truth of Thrush's alleged acts. Doria was advised of Thrush's circumstances by his superiors to explain the need for re-testing of Thrush's work.

¶19 However, the thrust of Brasda's request in the District Court was to probe the witnesses for evidence of contamination of the sample. In that regard, Brasda offered merely a possibility of contamination, not proof of mishandling or tampering by Thrush. For chain of custody, the State is required to make a "prima facie showing of a continuous chain of possession and that there was no substantial change in the evidence while it was in its possession." *McCoy*, ¶ 13, (citing *Weeks*, 270 Mont. at 75, 891 P.2d at 484). "The burden then shifts to the defense to show that the evidence has been tampered with while

in the State's custody." *Weeks*, 270 Mont. at 75, 891 P.2d at 484 (citing *State v. Armstrong*, 189 Mont. 407, 432, 616 P.2d 341, 355 (1980); *State v. Wells*, 202 Mont. 337, 356, 658 P.2d 381, 391 (1983)). Here, as the District Court reasoned:

> [W]e don't know whether the sample has been tampered with, because the Defendant can't prove it. . . . [T]hose cases say that speculation and 'what if' isn't—about what might have happened to the sample isn't enough, that defense has got to have solid proof that somebody actually did tamper with the sample. You have proven that [Thrush] could have tampered with it. You haven't proven he did on a more likely basis or otherwise.

¶20 While Brasda correctly argues on appeal that questions concerning Thrush's involvement to demonstrate retesting of the sample were appropriate under the Rules of Evidence, nonetheless his trial request was premised upon speculation about contamination, and under these circumstances we conclude the District Court did not abuse its discretion in barring further inquiry.

¶21 Affirmed.

/S/ JIM RICE

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON

10